Jaime Lopez v. Sandra Lopez



NUMBER 13-00-360-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

____________________________________________________________________


JAIME C. LOPEZ AND ZULEMA C. LOPEZ, Appellants,


v.


SANDRA LOPEZ, Appellee.

____________________________________________________________________


On appeal from the 105th District Court of Nueces County, Texas.

____________________________________________________________________


O P I N I O N

Before Justices Dorsey, Hinojosa, and Castillo

Opinion by Justice Hinojosa


Jaime C. Lopez ("Jaime") appeals from a divorce decree directing him to pay his ex-wife, Sandra Lopez ("Sandra"),
post-divorce spousal maintenance for three years in monthly payments of $840.00. By a single point of error, Jaime
contends the trial court erred in awarding the spousal maintenance because: (1) Sandra received sufficient property in the
divorce decree to provide for her minimum reasonable needs, (2) she does not have an incapacitating physical or mental
disability, and (3) she did not rebut the presumption that maintenance is not warranted because she did not seek suitable
employment or develop the skills necessary to become self-supporting while she and Jaime were separated and the divorce
was pending.

Zulema Lopez ("Zulema"), Jaime's mother and Intervenor in the case, appeals from the divorce decree because the trial
court found that the property located at 3034 MacArthur St. in Corpus Christi was community property and that Zulema did
not have a one-half interest in the property. By two points of error, Zulema contends the trial court erred in denying her
motion for leave to permit additional evidence and her motion for new trial.

A. Jaime's Appeal 


Section 8.002 of the family code provides that a trial court may order spousal maintenance if (1) the duration of the
marriage was ten years or longer, (2) the spouse seeking maintenance lacks sufficient property, including property
distributed to the spouse under the code, to provide for the spouse's minimum reasonable needs (as limited by section
8.005), and (3) the spouse seeking maintenance is unable to support herself through appropriate employment because of an
incapacitating physical disability. Tex. Fam. Code Ann. § 8.002 (a)(2) (Vernon Supp. 2001). However, it is presumed that
maintenance is unwarranted unless the potential recipient exercised diligence in (1) seeking suitable employment or (2)
developing the necessary skills to become self-supporting during the period of separation and time the suit for dissolution
of the marriage was pending. Tex. Fam. Code Ann. § 8.004 (a) (Vernon 1998). Section 8.004 does not apply to a spouse
who is not able to satisfy the presumption because of an incapacitating physical or mental disability. Tex. Fam. Code Ann.
§ 8.004 (b) (Vernon 1998). Thus, to be eligible for spousal maintenance, the spouse seeking support must first show that
she clearly lacks property and earning ability adequate to provide for her reasonable needs. Alexander v. Alexander, 982
S.W.2d 116, 119 (Tex. App.-Houston [1st Dist.] 1998, no pet.).

After determining that a spouse is eligible for maintenance, the trial court must determine the nature, amount, duration, and
manner of periodic payments by considering all relevant factors, including, but not limited to:

 


 the financial resources of the spouse seeking maintenance, including the community and separate property and liabilities
apportioned to that spouse in the dissolution proceeding, and that spouse's ability to meet the spouse's needs
independently;




 


 the education and employment skills of the spouses, the time necessary to acquire sufficient education or training to
enable the spouse seeking maintenance to find appropriate employment, the availability of that education or training, and
the feasibility of that education or training;




 


 the duration of the marriage;




 


 the age, employment history, earning ability, and physical and emotional condition of the spouse seeking maintenance;




 


 the ability of the spouse from whom maintenance is requested to meet that spouse's personal needs and to provide
periodic child support payments, if applicable, while meeting the personal needs of the spouse seeking maintenance;




 


 acts by either spouse resulting in excessive or abnormal expenditures or destruction, concealment, or fraudulent
disposition of community property, joint tenancy, or other property held in common;




 


 the comparative financial resources of the spouses, including medical, retirement, insurance, or other benefits, and the
separate property of each spouse;




 


 the contribution by one spouse to the education, training, or increased earning power of the other spouse;




 


 the property brought to the marriage by either spouse;




 


 the contribution of a spouse as a homemaker;




 


 marital misconduct of the spouse seeking maintenance; and




 


 the efforts of the spouse seeking maintenance to pursue available employment counseling as provided by chapter 304 of
the labor code. 




Tex. Fam. Code Ann. § 8.003 (Vernon 1998). 

We review the trial court's decision to award spousal maintenance under an abuse of discretion standard. Alexander, 982
S.W.2d at 119; In the matter of Hale, 975 S.W.2d 694, 697 (Tex. App.-Texarkana 1998, no pet.);DuBois v. DuBois, 956
S.W.2d 607, 612 (Tex. App.-Tyler 1997, no pet.). The trial court abuses its discretion when it acts arbitrarily or
unreasonably, or without any reference to guiding rules and principles. See E.I. du Pont de Nemours & Co. v. Robinson,
923 S.W.2d 549, 558 (Tex. 1995). The trial court does not abuse its discretion if there is some evidence of a substantive
and probative character to support the decision or if reasonable minds could differ as to the result. In re Bertram, 981
S.W.2d 820, 826-27 (Tex. App.-Texarkana 1998, no pet.). Absent a clear abuse of discretion, we do not disturb the trial
court's decision to award spousal maintenance. Hale, 975 S.W.2d at 697. Deciding what the minimum reasonable needs
are for a particular individual is a fact-specific determination that should be made by the trial court on a case-by-case basis. 
See id.

The trial court filed findings of fact and conclusions of law. Findings of fact in a case tried to the court have the same force
and dignity as a jury's verdict. Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's
findings of fact which are relevant to Jaime's contentions on the issue of maintenance are:

 


 Sandra Lopez qualifies for spousal maintenance under chapter 8 of the Texas Family Code. The parties in this case have
been married for over ten years. Sandra Lopez lacks sufficient property, including property distributed to the spouse
under this code, to provide for the spouse's minimum reasonable needs, as limited by Section 8.005. Sandra Lopez is
unable to support herself through appropriate employment because of physical incapacity from diabetes and a mental
incapability from depression. Sandra Lopez also clearly lacks earning ability in the labor market adequate to provide
support for her minimum reasonable needs. The facts herein justify an award to Sandra Lopez of 36 months of spousal
maintenance of $840.00 per month.




As a factor in determining maintenance, the trial court found:

6d. Sandra Lopez's age (which is 53 years), her employment history (which is part-time), her earning ability (which is
minimum wage for part-time work), and the physical and emotional condition of Sandra Lopez, who has diabetes and
suffers from depression. By contrast, Jaime C. Lopez earns $52,700.00 annually, has a long employment history with the
United States Postal Service, and is in good health. 



The testimony at trial established that Jaime and Sandra were married on December 28, 1969. Sandra graduated from high
school and attended cosmetology school, but she never worked outside the home. Sandra received a beautician's license in
the late 1980's, although she never worked as a beautician. According to Sandra, the license was an expense that the family
budget could not afford, so she stopped renewing her license a few years before she and Jaime separated. Sandra has been
working part-time at Trinity Towers, taking care of a seventy-five-year-old woman. The job requires Sandra to stay from
11:00 p.m. to 7:00 a.m. two nights a week, and she is paid $300.00 a month. Sandra also helps out at her son's flower shop
a couple of days a week, doing paperwork, making arrangements, and helping customers. Sandra's son, Richard, testified
that she was not on the payroll at his flower shop; he paid her out of his own pocket for the work she did. Richard testified
that he would either give Sandra some money, buy her dinner, or pay a bill for her. He said that with everything
considered, he probably only paid her "a couple hundred dollars, two or three hundred dollars" a month. 

Sandra has diabetes and is unable to work full time because of the stress and due to a fall she had at home which hurt her
back and tailbone. Due to the fall, she is only able to sit for two to three hours at a time. She testified that after working the
11:00 to 7:00 shift at Trinity Towers, she has to rest at least half a day to recover. Sandra testified that she is unable to
work an eight-hour-day every day because it hurts her back and her blood sugar is not stabilized. Sandra also testified that
even if she was able to renew her beautician's license, she would not be able to work as a hairdresser because she cannot
stand on her feet and move her arms like a hairdresser is required to do because of her injured back and diabetes. When
asked if he thought Sandra could get a job at another flower shop given her inability to sit for more than two or three hours,
Richard answered that he did not think so.

Jaime testified that he did not think Sandra had a disability because of her diabetes. "She's exaggerating there. She - I see
her at the shop all the time. She's always there." However, Jaime admitted that Sandra suffered from depression. He
testified, "She can start working herself. She's healthy . . . . She is a diabetic, but she can do everything else anybody else
can do as long as she controls her diabetes." Regarding Sandra's work at the flower shop, Jaime stated, "I worked with her
many times there, and I've seen her standing up hours and hours and I've seen her working lots of hours."

At trial, Sandra testified that her monthly expenses were $2,341.07. The property awarded to her in the divorce included
the home she lived in ($59,262.00), her vehicle ($7,014.83), the furniture and appliances in her home ($18,000.00), the
proceeds from the sale of the house at 3034 MacArthur ($33,678.99), a cemetery plot ($200.00), one-half of the Thrift
Savings Plan ($20,877.92), and the proceeds from various accounts and life insurance policies ($1,348.41).

It is undisputed that Jaime and Sandra were married for more than ten years. There is evidence in the record that the money
Sandra received from the community estate and the money she earns each month at Trinity Towers is insufficient to meet
her needs, and that, because of her de minimus formal education, limited work experience outside the home, and physical
health, the trial court could reasonably conclude that Sandra clearly lacked earning capacity in the labor market adequate to
meet her needs. 

After reviewing all the evidence, we cannot say that the trial court abused its discretion in awarding Sandra spousal
maintenance. Jaime's sole point of error is overruled.

B. Zulema's Appeal


On the day of trial, Zulema filed a petition in intervention claiming a financial and property interest in the real property
located at 3034 MacArthur. (1) Sandra did not object to the intervention "as long as there is no surprise in terms of
documentation." The trial court allowed Zulema to intervene in the case.

At trial, Zulema and Jaime testified that they were joint owners of the property. Zulema said that: (1) in 1996, she and
Jaime entered into a joint venture to buy the property; (2) each paid half of the purchase price of $12,000.00, even though
only Jaime's name appears on the papers prepared by the title company; (3) the rent proceeds, taxes, and any expenses
would be split 50/50; and (4) upon any future sale, each would realize a one-half property interest. Sandra testified that
Jaime told her he had bought the property for $12,000.00, $6,000.00 of which he had borrowed from his mother, Zulema. 

There was no documentary evidence that indicated Zulema had an interest in the property. The court found that Jaime was
the named owner of the property, but that Zulema had loaned Jaime $6000.00 to buy it. Zulema was allowed to recover the
$6,000.00.

At the close of her case, Zulema's counsel asked the trial court:

for a specific time period, very limited, in which the Court could consider any other additional evidence that could be
produced that could assist the Court in the resolution of the issues that are before the Court, specifically anything that may
be documented in terms of written memorandum, check, receipt. Because of the time constraints involved in my first
having to file my intervention this morning and not having had the opportunity, Your Honor, obviously to present any
documents, Your Honor, to the extent that the evidence may show there could be some documents, I would ask the Court to
consider in its discretion allowing a very short time frame for the introduction of any additional evidence . . . . 



The trial court implicitly denied the request when it stated, "I think I'll probably decide the case today." Sandra's counsel
objected to any delay in the proceedings, and the court sustained the objection.

On May 16, 2000, Zulema filed a "Motion for Leave to Permit Additional Evidence Under Texas Rule of Civil Procedure
270." In the motion, Zulema said that she had located written documentation of her alleged one-half interest and attached
the documentation, i.e., a typed note, dated November 16, 1996, acknowledging her interest in the property and signed by
Jaime and Zulema. (2)

 The trial court did not expressly rule on the motion, but the decree of divorce, signed on May 16, 2000, awarded Sandra
the proceeds from the sale of the MacArthur property, less the $6,000.00 awarded to Zulema. 

On June 15, 2000, Zulema filed a "Motion to Reconsider And Set Aside Final Decree of Divorce and Motion for New
Trial" alleging that the written documentation was new evidence supporting her claim for one-half interest of the property. 
On June 28, 2000, the court dismissed Zulema's motion for new trial as untimely filed, and in the alternative found:

that all of the matters raised in said motion have been previously ruled upon. The Court finds that nothing is presented that
will cause the Court to change any of its rulings and that no hearing on the motion is necessary. The Court is of the opinion
that the Motion should be denied.



On June 30, 2000, Zulema filed a "Motion to Reconsider, Modify and Set Aside Order Dismissing or, Alternatively,
Denying Intervenor's Motion for New Trial and Request for Hearing on Intervenor's Motion for New Trial or In the
Alternative, Motion for Partial New Trial Under T.R.C.P. 320." The trial court did not rule on this motion. 

By two points of error, Zulema contends the trial court erred (1) in denying her request to present additional evidence under
Texas Rule of Civil Procedure 270, and (2) in denying an evidentiary hearing on her motion for new trial and denying the
motion for new trial.

1. Rule 270


Texas Rule of Civil Procedure 270 allows a trial court to permit additional evidence to be offered at any time when it
clearly appears to be necessary to the due administration of justice. Tex. R. Civ. P. 270. Rule 270 allows, but does not
require, the court to permit additional evidence. See id.; Krishnan v. Ramirez, 42 S.W.3d 205, 223 (Tex. App.-Corpus
Christi 2001, no pet.). In determining whether to grant a motion to reopen, the trial court considers whether: (1) the
moving party showed due diligence in obtaining the evidence, (2) the proffered evidence is decisive, (3) reception of such
evidence will cause undue delay, and (4) granting the motion will cause an injustice. Word of Faith World Outreach v.
Oechsner, 669 S.W.2d 364, 366-67 (Tex. App.-Dallas 1984, no writ). "It is within the trial court's discretion and will be
disturbed on appeal only when clear abuse has been shown." See Guerrero v. Standard Alloys Mfg. Co., 598 S.W.2d 656,
658 (Tex. App.-Beaumont 1980, writ ref'd n.r.e.) (citations omitted). However, a trial court does not abuse its discretion by
refusing to reopen a case after evidence is closed if the party seeking to reopen has not shown diligence in attempting to
produce the evidence in a timely fashion. See Estrello v. Elboar, 965 S.W.2d 754, 759 (Tex. App.-Fort Worth 1998, no
pet.) (citing McNamara v. Fulks, 855 S.W.2d 782, 784 (Tex. App.-El Paso 1993, no writ). The trial court should exercise
its discretion liberally "in the interest of permitting both sides to fully develop the case in the interest of justice." Word of
Faith, 669 S.W.2d at 367.

Although the trial court did not expressly rule on Zulema's motion, when it signed the divorce decree and awarded the
property to Sandra, the court implicitly denied the motion. See Tex. R. App. P. 33.1 (a)(2)(A). We conclude the trial court
did not abuse its discretion because Zulema did not show that she used due diligence in obtaining the document. The
record shows that the petition for divorce had been on file since November 1999, and Zulema made no effort to locate any
documentation to support her claims until after the court granted the divorce and divided the property. (3) Furthermore, the
document is not decisive because it is unsworn, and it is simply cumulative of Zulema's and Jaime's testimony at trial. 
Accordingly, we hold the trial court did not abuse its discretion in implicitly denying Zulema's motion to present additional
evidence. Zulema's first point of error is overruled.

2. Motion for New Trial


In her second point of error, Zulema contends the trial court erred in denying her motion for new trial. Specifically, Zulema
asserts the trial court should have granted the new trial based on the newly discovered document.

A party seeking a new trial on the ground of newly discovered evidence must satisfy the court that: (1) the evidence came
to her knowledge since the trial, (2) it was not because of lack of due diligence that it came late, (3) the new evidence is not
cumulative, and (4) the new evidence is so material that it would probably produce a different result if a new trial was
granted. Jackson v. Van Winkle, 660 S.W.2d 807, 809 (Tex. 1983). The trial court has wide discretion in ruling on a
motion for new trial, and its action will not be disturbed on appeal absent a showing of an abuse of discretion. In re
Bayerische Motoren Werke, 8 S.W.3d 326, 327 (Tex. 2000); Johnson v. Fourth App. Ct., 700 S.W.2d 916, 918 (Tex. 1985).

In Sandra's response brief, she contends that Zulema's motion for new trial was untimely and, therefore, a nullity. See Tex.
R. Civ. P. 329b; Jackson, 660 S.W.2d at 808. In fact, the trial court's order dismissing and, alternatively, denying Zulema's
motion for new trial specifically found that the motion was untimely filed because it was hand-delivered on June 19, 2000,
more than thirty days after the court signed the decree of divorce on May 16, 2000. In her motion for reconsideration,
Zulema provided the court with an affidavit of mailing and a copy of the original envelope, with a postmark of June 15,
2000.

Assuming, arguendo, that the trial court had jurisdiction to consider the motion for new trial, it further stated in its order of
dismissal that if it did have jurisdiction, it found, after reviewing the merits of the motion,

that all of the matters raised in said motion have been previously ruled upon. The Court finds that nothing is presented that
will cause the Court to change any of its rulings and that no hearing on the motion is necessary. The Court is of the opinion
that the Motion should be denied.



As we stated above, assuming the document was discovered after trial, Zulema did not show that she used due diligence in
discovering the document, and it is merely cumulative of her testimony at trial. Therefore, we cannot say that the trial court
abused its discretion. Zulema's second point of error is overruled.

We affirm the trial court's final decree of divorce.



FEDERICO G. HINOJOSA

Justice





Publish. Tex. R. App. P. 47.3.



Opinion delivered and filed this the

9th day of August, 2001.

1. Zulema's counsel stated, "I was retained very late yesterday, Your Honor, by Mrs. Sulema [sic] Lopez who is the mother
of the Respondent, Jaime Lopez, and my understanding was that she had anticipated that this matter would have gotten
resolved between the parties, and for that reason had not anticipated having to hire an attorney until she learned that, in fact,
the disposition of this property as far as her interest is concerned was not going to be addressed so it was very late in the
afternoon yesterday when I contacted Ms. Coover's office and learned she was not available so this morning was the earliest
I was able to file a Petition in Intervention, Your Honor."

2. The document states as follows:



November 16, 1996



Mother, this is to acknowledge that the house on 3034 MacArthur has been purchased jointly by us. Your $6,000.00 for
half of the purchase was deposited in my account. I made a check for $12,000.00 for the full purchase of the home. San
Jacinto Title Company has prepared the paper work and has paid off the house to Stella Minshaw. The original Owner's
Title Policy # is 440357971055. All rent money including repairs will be equally divided between us.



Jaime C. Lopez Zulema C. Lopez

/s/ /s/ 

3. In her motion to reconsider, Zulema states: "At the time of trial of April 26, 2000, Intervenor could not remember that
such written documentation indeed existed and furthermore, even if Intervenor had remembered that such written
documentation existed, she would not have had sufficient time to locate such documentation one day before the trial of
April 26, 2000."