COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-418-CV
 
  
GINA 
LIVELY AND ROBERT LIVELY                                        APPELLANTS
  
V.
  
ADVENTIST 
HEALTH SYSTEM/                                                  APPELLEE
SUNBELT, 
INC. d/b/a HUGULEY
MEMORIAL 
MEDICAL CENTER
 
 
------------
 
FROM 
THE 236TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        This 
is a premises liability case arising from an alleged carjacking, abduction, and 
sexual assault. Appellants Robert and Gina Lively appeal from a judgment 
granting a directed verdict in favor of Appellee, Adventist Health 
System/Sunbelt, Inc. d/b/a Huguley Memorial Medical Center (the Hospital). 
Appellants complain in three issues that the trial court erred in granting a 
directed verdict on their causes of action for premises liability based on 
negligence and breach of implied warranty, and that the trial court abused its 
discretion in overruling their motion to reopen or for mistrial and in refusing 
to grant a new trial and sanctions. We will affirm.
I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
        Gina 
Lively, a nurse employed by the Hospital, was found wandering in San Antonio in 
a park near the Alamo on February 13, 2000. Gina had no memory of her identity 
or the events of the morning when she was found. As her memory returned, she 
recorded her recollections in a diary. According to her diary, at approximately 
7:00 a.m. on the morning of February 12, 2000, she had been driving to work at 
the Hospital in Forth Worth and had turned onto Medpark Drive, a road on the 
Hospital’s premises leading to the parking lots, when she was accosted by four 
or five Hispanic men in gang attire, including bandanas. One appeared to have an 
injured leg. She stopped and exited her van to offer aid, whereupon they forced 
themselves into her vehicle, abducted her, and serially sexually assaulted her 
at a rest-stop south of the Hospital on Interstate 35 before proceeding to San 
Antonio, where she either escaped or was released. Her van was found in San 
Antonio, but the attackers were never identified or apprehended.
        Gina 
and her husband Robert sued the Hospital, alleging negligence and gross 
negligence in failing to provide a reasonably safe premises by failing to 
maintain adequate security for its employees. They also alleged negligent 
misrepresentation and breach of an implied warranty of safe premises. Gina 
alleged damages for traumatic brain injury, emotional trauma and resultant 
traumatic stress disorder, diminution of memory, physical and emotional pain and 
suffering, and exemplary damages. Robert also sought damages for lost wages 
while caring for Gina at home.
        The 
trial began on August 13, 2002 and spanned five days, during which Appellants 
presented testimony in support of their claims. John Marcus Wood, Facilities 
Manager of the Hospital, and his immediate superior, Kent Tucker, testified 
regarding security services provided by the Hospital and criminal activity on 
the premises. Appellants also presented testimony of former employees regarding 
incidents of crime or assaults on the Hospital premises. Appellants relied on 
the expert testimony of Stephen R. Bell, formerly employed for thirty-four years 
by the City of Dallas as a police officer and now employed as a security 
consultant with the International Association of Chiefs of Police and the Texas 
Department of Criminal Justice.
        Appellants 
rested on August 19, 2002, subject to calling Gina’s treating psychologist. 
The Hospital then moved for a directed verdict on seven grounds: (1) exclusivity 
of worker’s compensation insurance as Appellants’ sole remedy; (2) no clear 
and convincing evidence of malice to support exemplary damages; (3) no cause of 
action in Texas for breach of implied warranty of safety of the premises; (4) no 
evidence of negligent misrepresentations of safety of the premises; (5 and 6) no 
evidence of cause-in-fact or foreseeability as the two elements of proximate 
cause to support Appellants’ cause of action for negligence; and (7) no cause 
of action for lost wages of Robert.
        The 
following morning, August 20, 2002, Appellants moved to reopen and for a 
mistrial. The trial court overruled those motions and granted the Hospital’s 
motion for directed verdict on all grounds presented, except the worker’s 
compensation exclusivity defense. Following rendition of judgment, Appellants 
filed a motion for new trial and for sanctions, which the trial court denied 
after a hearing.
II. THE DIRECTED VERDICT
        A 
directed verdict is proper when no evidence of probative force raises a fact 
issue on the material questions in the suit. Prudential Ins. Co. v. Fin. 
Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000); Ray v. McFarland, 
97 S.W.3d 728, 730 (Tex. App.—Fort Worth 2003, no pet.); see also TEX. R. CIV. 
P. 268. A directed verdict for a defendant may be proper if (1) the plaintiff 
fails to present evidence raising a fact issue essential to the plaintiff’s 
right to recover or (2) the evidence conclusively establishes a defense to the 
plaintiff’s cause of action. Prudential Ins. Co., 29 S.W.3d at 77.
        In 
reviewing a directed verdict, we view the evidence in the light most favorable 
to the party against whom the verdict was rendered, disregard all evidence and 
inferences to the contrary, and give the nonmovant the benefit of all inferences 
arising from the evidence. Szczepanik v. First S. Trust Co., 883 S.W.2d 
648, 649 (Tex. 1994); Qantel Bus. Sys. V. Custom Controls, 761 S.W.2d 
302, 303-04 (Tex. 1988). If we determine that any evidence, more than a 
scintilla, raises a fact issue on any material question presented, then the 
directed verdict is improper. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 
242 (Tex. 2001); Szczepanik, 883 S.W.2d at 649; Coronado v. Schoenmann 
Produce Co., 99 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 
2003, no pet.), disapproved in part on other grounds by Wingfoot 
Enters.v. Alvarado, 111 S.W.3d 134, 149 (Tex. 2003) . More than a scintilla 
of evidence exists when the evidence rises to a level that would enable 
reasonable and fair-minded people to differ in their conclusions. Minyard 
Food Stores v. Goodman, 80 S.W.3d 573, 577 (Tex. 2002).
        A. 
Negligence
        In 
their first issue, Appellants complain that the trial court erred in granting 
the directed verdict based on no evidence of the foreseeability component of 
proximate cause as to their alleged negligence. Appellants recognize that their 
cause of action for negligence is based upon premises liability for failing to 
remedy an unreasonable risk of harm due to a condition of the premises. See 
Timberwalk Apartment Partners, Inc. v. Cain, 972 S.W.2d 749, 757 (Tex. 1998) 
(holding a complaint that an owner failed to provide adequate security against 
criminal conduct is ordinarily a premises liability claim).
        Liability 
in negligence requires a duty, breach of the duty, and damages proximately 
caused by that breach. Doe v. Boys Club of Greater Dallas, Inc., 907 
S.W.2d 472, 477 (Tex. 1995); Greater Houston Transp. Co. v. Phillips, 801 
S.W.2d 523, 525 (Tex. 1990). Preliminarily, we note that, as an employee of the 
Hospital, Gina would be classified as an “invitee” on its premises. Guerrero 
v. Mem’l Med. Ctr. of E. Tex., 938 S.W.2d 789, 791 (Tex. App.—Beaumont 
1997, no pet.) (citing Hernandez v. Heldenfels, 374 S.W.2d 196, 197 (Tex. 
1963)). An owner or occupier in control of premises generally must exercise 
reasonable care to make the premises safe for the use of invitees. Lefmark 
Mgmt. Co. v. Old, 946 S.W.2d 52, 53 (Tex. 1997). Ordinarily, this duty does 
not include preventing criminal acts of third parties over whom the premises 
owner has no control. Id.; see also Timberwalk, 972 S.W.2d at 756; Walker 
v. Harris, 924 S.W.2d 375, 377 (Tex. 1996); Exxon Corp. v. Tidwell, 
867 S.W.2d 19, 21 (Tex. 1993). An exception is that an owner or occupier of land 
does have a duty to protect invitees from criminal acts of third parties if it 
knows or has reason to know of an unreasonable and foreseeable risk of harm. Timberwalk, 
972 S.W.2d at 756; Lefmark, 946 S.W.2d at 53; Centeq Realty Co. v. 
Siegler, 899 S.W.2d 195, 197 (Tex. 1995).
        The 
Hospital contends that the trial court granted the directed verdict as to 
negligence based not only on there being no evidence of foreseeability, but also 
because Appellants failed to produce any evidence of cause-in-fact. The Hospital 
points out that because Appellants have not complained of error in granting the 
directed verdict on the element of cause-in-fact, we may uphold the directed 
verdict on negligence on the basis that Appellants failed to produce any 
evidence of cause-in-fact.
        In 
their reply brief, Appellants disagree with the Hospital’s characterization of 
the trial court’s basis for the directed verdict, contending the trial court 
limited its directed verdict to foreseeability, not cause-in-fact, and that it 
could not have granted the directed verdict on cause-in-fact because it would 
have been reversible error to do so when Appellants had only rested “subject 
to” calling their treating psychologist. Appellants argue that the treating 
psychologist could have furnished opinions as to causation of Gina’s injuries. 
Appellants correctly argue that it is generally reversible error to grant a 
directed verdict before a plaintiff has rested. See, e.g., Wedgeworth v. 
Kirksey, 985 S.W.2d 115, 116-17 (Tex. App.—San Antonio 1998, pet. denied) 
(refusing to apply harmless error test for directed verdict before plaintiff had 
rested); Nassar v. Hughes, 882 S.W.2d 36, 37 (Tex. App.—Houston [1st 
Dist.] 1994, writ denied); Buckner v. Buckner, 815 S.W.2d 877, 878 (Tex. 
App.—Tyler 1991, no writ).
        We 
may uphold a directed verdict even if the trial court’s rationale was 
erroneous, provided the directed verdict can be supported on another basis. Kingston 
v. Helm, 82 S.W.3d 755, 758 (Tex. App.—Corpus Christi 2002, pet. denied); Exxon 
Corp. v. Breezevale Ltd., 82 S.W.3d 429, 442-43 (Tex. App.—Dallas 2002, 
pet. denied). We find three flaws in Appellants’ argument concerning the 
element of cause-in-fact—all of which are fatal. First, Appellants never 
complained in the trial court that the directed verdict was error on the ground 
that it was granted before they had fully rested. Therefore, we conclude that 
any such complaint was not preserved for review. See Tex. R. App. P. 33.1.
        Second, 
we agree with the Hospital that there was no evidence on the component of 
cause-in-fact. The premises owned by the Hospital are located off of Interstate 
35 in south Fort Worth, comprising approximately 279 acres, including a tower 
with patient rooms, an emergency facility, a retirement center, a hospice house, 
a fitness center, and parking areas, all of which are approached by entering the 
property on Medpark Drive, the road on which Gina was allegedly accosted and 
abducted. Gina advised the police investigating the incident that the men who 
abducted her came from the general direction of a deep creek with a twenty-foot 
embankment behind the patient tower, beyond which lay rough terrain and a plowed 
field, with the next road over a mile and a half away.
        Wood, 
the Hospital’s facilities manager, was in charge of security of the grounds 
and premises safety. Wood testified that the Hospital contracted with Smith 
Security Agency for unarmed security by providing a foot patrol for the 
buildings and a driving patrol for the parking lots, taking care of access, 
escorting employees to their cars if requested, securing doors, and reporting 
daily to him. Wood issued “post orders” to define their duties. In addition, 
the Hospital employed off-duty police officers, stationed primarily in the 
emergency room area or the tower, but who were available to go where needed, and 
also provided video surveillance in the emergency room area and the driveway to 
that facility.
        The 
only testimony bearing on the element of cause-in-fact came from Appellants’ 
security expert, Stephen Bell. Bell had reviewed the reports of the security 
agency that the Hospital contracted with, as well as the depositions of Wood and 
Tucker and Wood’s orders for security, and testified that, in his opinion, the 
security level was “inadequate” on the date in question. He further 
testified as follows:
 
Q. 
Now, are you telling the jury that if they had an adequate level of security, 
that this incident would not have occurred?
 
A. 
No. I’m not suggesting that there is going to be a guarantee on any of this.
 
 
Bell 
never testified that additional security measures would have probably prevented 
the alleged abduction. To the contrary, he declined to so state, and further 
agreed on cross-examination that there is no security system that would protect 
a woman who allows gang members to flag down her vehicle and then opens her door 
to them. We agree that there was no evidence establishing that it was more 
probable than not that Gina would not have been injured had there been 
additional safety precautions. See, e.g., Havner v. E-Z Mart Stores, Inc., 
825 S.W.2d 456, 459 (Tex. 1992) (three experts testified employee probably would 
be alive had employer provided proper security); Dickinson-Arms-REO, L.P. v. 
Campbell, 4 S.W.3d 333, 341 (Tex. App.—Houston [1st Dist.] 
1999, pet. denied) (expert testimony established additional security measures 
probably would have prevented attack); Lincoln Prop. Co. v. DeShazo, 4 
S.W.3d 55, 59 (Tex. App.—Fort Worth 1999, pet. denied) (expert testified 
presence of additional security guards probably would have prevented attack).
        Thirdly, 
Appellants have not attempted to add an issue on appeal complaining of error in 
granting the directed verdict on cause-in-fact, but merely argue in their reply 
brief the fact that they had not fully rested as a reason why the court 
could not have granted the directed verdict on cause-in-fact and, therefore, did 
not need to be challenged. Having reviewed the reporter’s record and the 
clerk’s record regarding the bases for the directed verdict, it is clear that 
the trial court could have granted the directed verdict as to Appellants’ 
negligence cause of action on either the foreseeability element or the 
cause-in-fact component of proximate cause.[2]  
Because Appellants have waived any ground of error on appeal based on the trial 
court’s having granted the directed verdict before they fully closed by 
failing to raise the issue on appeal, the directed verdict on the negligence 
cause of action may be upheld on the unchallenged ground of no evidence of 
cause-in-fact. See Tex. R. App. P. 
38.3; Penley v. Westbrook, No. 2-02-260-CV, 2004 WL 1119361, at *4 (Tex. 
App.—Fort Worth May 20, 2004, no pet. h.) (holding Appellant waived appellate 
issues by only briefing them in her reply brief).
         B.     Breach 
of Implied Warranty
        By 
the second subpart of their first issue, Appellants complain of the directed 
verdict on their claim for breach of implied warranty of safety. Appellants cite 
no precedent for recognizing an implied warranty to the public to keep premises 
safe, nor are we inclined to create one, given the availability of an adequate 
remedy to an invitee, either as a member of the public or as an employee, 
through the existing cause of action in Texas for premises liability based on 
negligence. See Dennis v. Allison, 698 S.W.2d 94, 96 (Tex. 1985); Codner 
v. Arellano, 40 S.W.3d 666, 672 (Tex. App.—Austin 2001, no pet.) (“It is 
not necessary to impose an implied warranty as a matter of public policy if the 
plaintiff has other adequate remedies to redress the alleged wrongs committed by 
the defendant.”); Humble Nat’l Bank v. DCV, Inc., 933 S.W.2d 224, 239 
(Tex. App.—Houston [14th Dist.] 1996, writ denied). Further, we 
agree with those courts that have rejected the existence of an implied warranty 
of safety. See, e.g., Henry v. Cullum Cos., 891 S.W.2d 789, 796 (Tex. 
App.—Amarillo 1995, writ denied) (rejecting claim of breach of implied 
warranty of safe place to shop under DTPA in a slip-and-fall case because “the 
use of the floors[] is not within the DTPA’s definition of ‘services’”); 
see also Gonzalez v. Mountain Valley Apartments, No. 05-99-01042-CV, 2000 
WL 1201774, at *4-5 (Tex. App.—Dallas 2000, pet. denied) (not designated for 
publication)[3]  (rejecting claim for breach of 
implied warranty of habitability for personal injuries by tenants shot in 
parking lot).
        A 
directed verdict may be proper when the substantive law does not permit the 
plaintiff to recover on a cause of action. See S.V. v. R.V., 933 S.W.2d 
1, 8 (Tex. 1996) (holding directed verdict proper where statute of limitations 
barred cause of action); Arguelles v. U.T. Fam. Med. Ctr., 941 S.W.2d 
255, 258 (Tex. App.—Corpus Christi 1996, no writ) (holding directed verdict 
proper because Texas does not recognize “loss of chance” claim in medical 
malpractice suit). Accordingly, we hold the trial court properly granted the 
directed verdict based on the lack of a recognized cause of action for breach of 
implied warranty. We overrule Appellants’ their first issue.

III. MOTION TO REOPEN AND FOR MISTRIAL
AND MOTION FOR NEW TRIAL
 
        In 
their second issue, Appellants complain that the trial court abused its 
discretion in overruling their motion to reopen and motion for mistrial. In 
their third issue, Appellants complain that the trial court abused its 
discretion in failing to order a new trial and sanctions against the 
Hospital’s representatives, including its risk manager and its counsel, on the 
same grounds. Therefore, we will consider Appellants’ second and third issues 
together.
        A.     Motion to 
Reopen
        After 
hearing the Hospital’s motion for directed verdict, the trial court advised 
counsel that it was inclined to grant the directed verdict but would not 
announce its ruling until the following morning. The next morning, August 20, 
2002, Appellants moved to reopen, not to present testimony from Gina’s 
psychologist—the witness whom they had rested subject to calling—but to 
present testimony of two nurses employed by the Hospital, Michele Love and 
Carolyn Rogers, both of whom had attended to Gina as a patient after the attack. 
Appellants’ counsel advised the court that he had discovered information only 
the previous evening concerning those two witnesses.
        Appellants’ 
counsel stated in arguing their motion to reopen that, although he had conversed 
with Nurse Love the week before trial, and she had expressed a willingness to 
testify, she had not appeared, and he had only the night before been able to 
contact Nurse Love again. According to Appellants’ counsel, he had subpoenaed 
her and she could not appear until the following day, but she would testify as 
to Gina’s condition regarding bruises on her arms, that she and other nurses 
were aware of inadequate security at the Hospital and did not feel safe, and 
that she was aware of at least two prior incidents near the time of the 
occurrence involving Gina—one involving a male individual brandishing a knife 
in the maternity ward and the other involving a young Hispanic male found 
looking for syringes in the storage area. Appellants’ counsel further stated 
that Nurse Love had informed him that Nurse Rogers would confirm her testimony 
regarding the security issues, but he had not yet contacted Nurse Rogers.
        Motions 
to reopen are allowed when it “clearly appears to be necessary to the due 
administration of justice” at any time; provided that in a jury case no 
evidence may be allowed on a controversial matter after the jury’s verdict. Tex. R. Civ. P. 270. The party seeking 
to reopen must show: (1) due diligence was exercised in obtaining the evidence; 
(2) the new evidence is “decisive”; (3) allowing additional evidence will 
not cause undue delay; and (4) allowing the additional evidence will not cause 
injustice. Lopez v. Lopez, 55 S.W.3d 194, 201 (Tex. App.—Corpus Christi 
2001, no pet.); Ex parte Stiles, 950 S.W.2d 444, 446-47 (Tex. App.—Waco 
1997, no pet.); see also In re S.L.M., 97 S.W.3d 224, 230 (Tex. 
App.—Amarillo 2002, no pet.). The decision to allow a party to reopen is 
ordinarily within the sound discretion of the trial court. Lopez, 55 
S.W.3d at 201; In re Hawk, 5 S.W.3d 874, 877 (Tex. App.—Houston [14th 
Dist.] 1999, no pet.). The trial court should liberally exercise its discretion 
in favor of allowing both sides to fully develop the case. Lopez, 55 
S.W.3d at 201.
        Appellants 
urge that the trial court abused its discretion in failing to allow them to 
reopen, because the evidence was material, significant and, therefore, 
“decisive.” Appellants also contend that, because of the Hospital’s overt 
efforts to conceal the evidence at issue, they exercised due diligence in 
promptly bringing the discovered evidence to the trial court’s attention the 
morning after it was discovered, which was the evening of the day the Hospital 
sought the directed verdict. Appellants maintain that there would have been no 
undue delay, and the trial court should have exercised its discretion to allow 
Appellants to reopen in the interest of justice.
        Appellants 
assert that the testimony of Nurse Love and Nurse Rogers would have been 
material and decisive on the issue of foreseeability, in that Nurse Love would 
have testified that she and other nurses were “aware” of inadequate security 
at the Hospital, that the lack of security had become the brunt of jokes among 
the nurses, and that she had personal knowledge of the two security incidents 
near in time to the occurrence involving Gina. Appellants contend that Nurse 
Rogers would confirm Nurse Love’s testimony.
        The 
Hospital responds that the evidence sought to be offered met none of the 
criteria for allowing a party to reopen. It was not decisive, the Hospital did 
not conceal evidence, and Appellants failed to use due diligence, so the trial 
court did not abuse its discretion in refusing to allow Appellants to reopen.[4] We agree with the Hospital that the testimony of Nurse 
Love and Nurse Rogers would not have been decisive.
        The 
affidavit of Nurse Love regarding a bruise on Gina’s arm would have been 
relevant to whether she was, in fact, abducted. However, whether she was 
abducted was not at issue on the motion for directed verdict. The two security 
incidents about which she would have testified would have been cumulative of 
other incidents described by the facilities manager and former employees, 
incidents occurring inside the hospital, not in the parking lots and not on 
Medpark Drive. Additionally, while Nurse Love indicated these events occurred 
near the time of Gina’s alleged abduction, there was no evidence as to whether 
they occurred prior to that event. As such, they would not have been 
probative on the issue of foreseeability. Timberwalk, 972 S.W.2d at 756 
(holding foreseeability requires evidence of specific incidents of prior 
similar criminal activity). As to Nurse Love’s expressed concern for safety 
and her statement that other nurses felt unsafe, there is no evidence as to 
whether these concerns were based upon actual incidents of crime that occurred 
before Gina’s alleged abduction or as to whether they were made known to the 
Hospital. Moreover, as subjective, lay opinions, they would not have been 
admissible or probative on the issue of the adequacy of the level of security, 
much less on the issue of foreseeability, and Appellants do not contend that 
Nurse Love would have provided testimony relevant to the element of 
cause-in-fact.
        There 
was no affidavit from Nurse Rogers or any offer of proof of her proposed 
testimony, other than counsel’s offer of proof that it would “confirm” 
that of Nurse Love. The same inadequacies inhere in that evidence, such that we 
must conclude that neither nurse’s testimony was “decisive” on the issues 
of foreseeability or cause-in-fact. Consequently, it is unnecessary to address 
the other criteria for allowing a party to reopen. We hold that the trial court 
did not abuse its discretion in overruling the motion to reopen. See Alkas v. 
United Sav. Ass’n, 672 S.W.2d 852, 860 (Tex. Civ. App.— Corpus Christi 
1984, writ ref’d n.r.e.) (finding no abuse of discretion where evidence not 
“decisive”).
        B.     Motion 
for Mistrial
        Appellants 
presented and argued their motion for mistrial together with their motion to 
reopen. The motion for mistrial appears largely to have been based upon asserted 
discovery abuse by the Hospital in (1) failing to properly respond to or 
supplement discovery requests regarding Nurse Love’s knowledge and, instead, 
overtly acting to conceal her knowledge; (2) failing to furnish evidence of 
security complaints during the three years prior to the alleged abduction; (3) 
restricting Appellants’ counsel’s ability to talk to Hospital employees; (4) 
presenting inaccurate or even perjured testimony regarding dates of contact by 
the Hospital’s risk manager, Diane Reynolds, with Nurse Love; and (5) the 
Hospital’s counsel improperly communicating with jurors.
        It 
appears from the record that Appellants were aware of the basis for the first 
three of these five complaints prior to trial and could have sought relief from 
the trial court but chose not to do so. As to insufficient discovery responses, 
the record reveals that, at a hearing in January 2002, some seven months before 
the case went to trial in August, counsel for Appellants agreed to accept “a 
brief synopsis” of the relevant facts known by the persons that the Hospital 
had listed as having knowledge. Thereafter, in February 2002, still some six 
months before trial, the Hospital furnished its amended responses to 
Appellants’ discovery requests and included summaries of the substance of the 
relevant facts and listed the persons having knowledge of such facts. Among its 
responses, the Hospital included a half page, single-spaced list of facts about 
which Nurse Love had knowledge.
        Appellants 
apparently made no further complaint until the motion for mistrial after trial 
was concluded, although the record reveals they also knew prior to trial that 
Nurse Love had additional information beyond what was contained in the summaries 
of her knowledge of relevant facts furnished by the Hospital. We note that the 
facts listed in the Hospital’s response included many of the details about 
which Appellants complained in the motion for mistrial, including that Gina had 
bruises and that she seemed to have no memory of her husband and children, facts 
that would support Gina’s version of the occurrence.
        During 
trial in mid-August 2002, outside the presence of the jury, Appellants’ 
counsel acknowledged that, while the original attorney for the Hospital had 
believed he had no right to talk to Hospital employees, once the Hospital’s 
representation was taken over by new counsel, that attorney agreed that he had 
such a right, and he said, “I did.” The record reveals that Appellants’ 
counsel thus made contact with Nurse Love on August 5, 2002, approximately two 
weeks before trial, that she “freely” spoke with him by telephone and in 
person, and that he learned before trial that she had knowledge of facts in 
addition to those disclosed by the Hospital, including that she saw a thumbprint 
bruise on Gina’s arm and that she and other nurses had concerns about 
inadequate safety on the premises and had joked about the security guards.
        Appellants 
were essentially seeking sanctions in the form of a mistrial after trial was 
concluded and after the trial court had announced its intention to grant a 
directed verdict. But the Hospital points out and the record confirms that 
Appellants knew before trial of the additional information possessed by Nurse 
Love. The failure to obtain a pretrial ruling on discovery disputes that exist 
before commencement of trial constitutes a waiver of any claim for sanctions 
based on that conduct. Cathey v. Meyer, 115 S.W.3d 644, 672 (Tex. 
App.—Waco 2003, pet. filed) (quoting Remington Arms Co. v. Caldwell, 
850 S.W.2d 167, 170 (Tex. 1993)); Finlay v. Olive, 77 S.W.3d 520, 526 
(Tex. App.—Houston [1st Dist.] 2002, no pet.). Appellants could 
have sought further relief from the trial court or they could have taken Nurse 
Love’s deposition before or even during trial. Additionally, they subpoenaed 
her for trial and yet rested without calling her, and they did not call her as a 
witness at the hearing on their motion for mistrial. We agree with the Hospital 
that Appellants waived any entitlement to sanctions for incomplete discovery 
responses, including Nurse Love’s (and Nurse Rogers’s) knowledge of 
additional relevant facts. See Remington, 850 S.W.2d at 170.
        Regarding 
Appellants’ complaint that the Hospital failed to produce incident reports 
regarding security issues, any such failure likewise appears from the record to 
have been apparent to Appellants before trial. Indeed, the record shows that 
reports were furnished to Appellants in February 2002, approximately six months 
before trial. Counsel for Appellants acknowledges he received 3,707 pages of 
security reports at that time, complaining only that they were “dumped” and 
“disorganized.” Appellants thus knew at that time whether the documents 
furnished were not sufficient but chose to wait until the eve of the directed 
verdict to object. We are compelled to agree with the Hospital that this basis 
for Appellants’ motion for mistrial is likewise waived. Id.
        As 
to Appellants’ complaint that they were prevented from talking to Hospital 
employees, Appellants’ counsel candidly acknowledged at a hearing on August 
16, 2002, during trial but outside the presence of the jury, that he knew those 
employees had been instructed not to talk to him by the Hospital’s prior 
counsel—months before trial—but admitted that the Hospital’s current 
counsel agreed that they could talk to Appellants’ counsel and that he had 
done so prior to trial. As we have previously noted, Appellants’ counsel did 
contact Nurse Love prior to trial and she spoke “freely” with him. Thus, it 
appears that Appellants’ complaint about being prevented from speaking with 
Hospital employees, and specifically Nurse Love, is likewise waived.
        The 
remaining two grounds for the motion for mistrial concern conduct of counsel for 
the Hospital and its risk manager, Diane Reynolds, during trial. In reviewing 
the denial of a mistrial on these grounds, we apply an abuse of discretion 
standard. Fiore v. Fiore, 946 S.W.2d 436, 437 (Tex. App.—Fort Worth 
1997, writ denied). Appellants’ counsel related that, while Nurse Love had 
initially agreed to appear and testify at trial, she did not appear and he had 
not been able to find her until after the trial court announced its intention to 
grant the directed verdict, at which time she told him she was advised again 
over the weekend during trial by the Hospital’s risk manager, Diane Reynolds, 
not to talk to him but to refer all questions to counsel for the Hospital. 
Appellants pointed out that this was contrary to Diane Reynolds’s testimony 
outside the presence of the jury during trial that she had not seen or spoken to 
Nurse Love for “maybe a year, perhaps eighteen months.” Nurse Love also told 
Appellants’ counsel that she was contacted by counsel for the Hospital over 
the weekend during trial and felt pressure from him that he would discredit her 
if she testified.
        Counsel 
for the Hospital acknowledged that he visited Nurse Love over the weekend during 
trial, but he told the trial court that he only advised her that if she were 
subpoenaed she had to “honor it,” and if she did not feel well enough to 
attend she would need to fax him a note from her doctor to present to the court. 
He denied pressuring her but further acknowledged that he had told her he would 
have to question her on cross-examination, if she testified she observed a 
bruise mark on Gina’s arm, as to why she did not chart her observation.
        Finally, 
Appellants’ motion for mistrial complained of improper contact by the 
Hospital’s counsel with two jurors. Appellants’ counsel told the court that 
he had come upon counsel for the Hospital conversing with two jurors in the hall 
outside the courtroom that morning. In response to questioning by the trial 
court, counsel for the Hospital acknowledged that he had overheard two jurors in 
the hallway talking about the Little League World Series and “if there was a 
dialogue” involving comments by him, it was about that subject. The trial 
court then questioned the jurors, two of whom acknowledged having a conversation 
with the Hospital’s counsel that morning, the gist of which was not about the 
case, they said, but an exchange of incidents about working for the railroad in 
Spring, Texas, and dry heat versus humidity.
        Diane 
Reynolds was not called to testify at that time, nor did Nurse Love testify. 
There was no indication why Nurse Love had refused to appear or testify either 
at trial or at the hearing on the motion for mistrial and no representation that 
her absence was caused by any action by Reynolds or the Hospital’s counsel. 
Moreover, neither their actions nor whether Reynolds had been untruthful about 
her contact with Nurse Love during the trial had any bearing on the merits of 
this case. The contact by counsel with the jurors took place after the Hospital 
had moved for directed verdict, and the only further proceeding in the trial was 
the hearing on Appellants’ motions to reopen and for mistrial, after which the 
trial court overruled those motions, granted the directed verdict, and released 
the jury.
        After 
hearing the motion for mistrial on the ground of improper communication between 
jurors and the Hospital’s counsel, the trial court stated:
 
The 
Court has examined the jurors and questioned them and their statements are on 
the record. The Court finds that Mr. Laser and those two jurors did indeed 
violate the Court’s instructions about not having conversations with each 
other. The Court is quite disappointed that this has taken place. However, the 
Court does not find that that misconduct rises to a level where a mistrial 
should be granted, so motion for mistrial is denied.
 
As 
to the conversations with Ms. Love and the allegations of intimidation, there 
are other remedies which may be explored as plaintiffs’ counsel sees 
appropriate. That’s for another time. . . . There are other remedies.
 
        The 
trial court had broad discretion in determining whether to grant a mistrial. Fiore, 
946 S.W.2d at 437; Astec Indus., Inc. v. Suarez, 921 S.W.2d 794, 798 
(Tex. App.—Fort Worth 1996, no writ). A trial court abuses its discretion when 
it acts without reference to any guiding rules or principles or is arbitrary or 
unreasonable. Fiore, 946 S.W.2d at 437 (citing Downer v. Aquamarine 
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 
476 U.S. 1159 (1986)). However, merely because a trial court decides a matter 
within its discretion differently than an appellate court would under the same 
circumstances does not demonstrate an abuse of discretion. Downer, 701 
S.W.2d at 241-42. Thus, where the issue involves a factual question or dispute, 
or a matter committed to the trial court’s discretion, the appellate court may 
not substitute its judgment for that of the trial court. Walker v. Packer, 827 
S.W.2d 833, 840 (Tex. 1992). Because the case was never submitted to the jury 
and because, as recognized by the trial court, other remedies were available 
concerning Appellants’ allegations that the Hospital’s counsel and risk 
manager intimidated Nurse Love, we cannot conclude that the trial court abused 
its discretion in denying the motion for mistrial on either of these two final 
grounds.
        C.     Motion 
for New Trial
        Appellants’ 
motion for new trial, in addition to complaining that the evidence raised fact 
issues on foreseeability, reiterated the issues previously raised in their 
motion to reopen and for mistrial and further sought such sanctions as might be 
deemed appropriate by the court against the Hospital’s representatives, 
including Diane Reynolds, and its counsel. The motion for new trial was 
accompanied by transcripts of the earlier hearings on the motion to reopen and 
for mistrial and Diane Reynolds’s earlier testimony.
        At 
the hearing on the motion for new trial, the only new evidence was an affidavit 
from Nurse Love and Diane Reynolds’s testimony. Nurse Love’s affidavit 
confirmed her proposed testimony as previously outlined by Appellants’ counsel 
to the court, but provided additional details. Appellants again urged that Nurse 
Love was intimidated or pressured by the Hospital’s counsel not to testify, 
and we note that she stated in her affidavit attached to the motion for new 
trial that she “detected an overt effort to pressure” from that attorney. 
However, she also averred that she would “refuse” to be pressured not to 
testify. Appellants’ counsel called Diane Reynolds to testify, and she 
admitted that her previous testimony during trial outside the presence of the 
jury, stating that she had not spoken to Nurse Love in the last year to eighteen 
months was “inaccurate,” in that she had spoken with her the previous week.
        The 
trial court had previously heard Appellants’ counsel’s account of his 
conversation with Nurse Love regarding this matter and had also heard the 
Hospital’s counsel’s account of his meeting with her. The court also had the 
benefit of observing the demeanor and hearing the conflicting testimony of 
Reynolds at both hearings. With respect to all of these facets of the issues 
regarding the asserted hindrance of Appellants’ counsel from obtaining Nurse 
Love’s testimony, we conclude that the trial court could have reasonably 
determined that the circumstances did not present grounds for sanctions in the 
form of a new trial against the Hospital or other sanctions against Reynolds and 
the Hospital’s counsel. We further conclude that the trial court did not abuse 
its discretion in overruling Appellants’ motion for new trial. See Marvelli 
v. Alston, 100 S.W.3d 460, 470 (Tex. App.—Fort Worth 2003, pet. denied) 
(holding trial court did not abuse its discretion in denying doctor’s request 
for new trial as a sanction for alleged threats made against witnesses).
        Appellants 
correctly note that the trial court may grant a new trial in the interest of 
justice, or for no reason at all. See Champion Int’l Corp. v. 12th Court of 
Appeals, 762 S.W.2d 898, 899 (Tex. 1988) (orig. proceeding). We cannot 
conclude that any conduct of the Hospital or its counsel in this case so tainted 
the merits of the case or the proceedings as to require a new trial in the 
interest of justice, or that the trial court abused its discretion in not 
granting a new trial under the circumstances presented to it in this difficult 
and hard-fought case. We overrule Appellants’ second and third issues.
IV. CONCLUSION
        Having 
overruled Appellants’ three issues, we affirm the judgment of the trial court 
that Appellants take nothing.
  
  
                                                          ANNE 
GARDNER
                                                          JUSTICE
 
 
PANEL B:   DAUPHINOT, 
GARDNER, and WALKER, JJ.
                WALKER, 
J. concurs without opinion.
DELIVERED: 
July 29, 2004


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
The court’s order states that Appellees moved for directed verdict as to 
Appellants negligence claims on the elements of cause-in-fact and 
foreseeability, and the order further states, “The Court found that 
[Appellants’] evidence did not raise a genuine issue of fact on one or more of 
the elements of their claim[] of negligence.
3.  
See Tex. R. App. P. 47.7 
(providing that unpublished cases may be cited, although they have no 
precedential value).
4.  
Because we rest our decision on the lack of the material and decisive nature of 
the proffered testimony, we will address Appellants’ complaint that the 
Hospital “concealed” the evidence in connection with Appellants’ motion 
for mistrial and for sanctions.