LIVELY ET AL. V. ADVENTIST HEALTH SYSTEM SUNBELT, INC. ET AL.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-02-418-CV

GINA LIVELY AND ROBERT LIVELY APPELLANTS

V.

ADVENTIST HEALTH SYSTEM/ 

SUNBELT, INC. d/b/a HUGULEY 

MEMORIAL MEDICAL CENTER APPELLEE

------------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

This is a premises liability case arising from an alleged carjacking,  abduction, and sexual assault.  Appellants Robert and Gina Lively appeal from a judgment granting a directed verdict in favor of Appellee, Adventist Health System/Sunbelt, Inc. d/b/a Huguley Memorial Medical Center (the Hospital). Appellants complain in three issues that the trial court erred in granting a directed verdict on their causes of action for premises liability based on negligence and breach of implied warranty, and that the trial court abused its discretion in overruling their motion to reopen or for mistrial and in refusing to grant a new trial and sanctions.  We will affirm.

I.  FACTUAL BACKGROUND
 AND PROCEDURAL
 
HISTORY

Gina Lively, a nurse employed by the Hospital, was found wandering in San Antonio in a park near the Alamo on February 13, 2000.  Gina had no memory of her identity or the events of the morning when she was found.  As her memory returned, she recorded her recollections in a diary.  According to her diary, at approximately 7:00 a.m. on the morning of February 12, 2000, she had been driving to work at the Hospital in Forth Worth and had turned onto Medpark Drive, a road on the Hospital’s premises leading to the parking lots, when she was accosted by four or five Hispanic men in gang attire, including bandanas.  One appeared to have an injured leg.  She stopped and exited her van to offer aid, whereupon they forced themselves into her vehicle, abducted her, and serially sexually assaulted her at a rest-stop south of the Hospital on Interstate 35 before proceeding to San Antonio, where she either escaped or was released.  Her van was found in San Antonio, but the attackers were never identified or apprehended. 

Gina and her husband Robert sued the Hospital, alleging negligence and gross negligence in failing to provide a reasonably safe premises by failing to maintain adequate security for its employees.  They also alleged negligent misrepresentation and breach of an implied warranty of safe premises.  Gina alleged damages for traumatic brain injury, emotional trauma and resultant traumatic stress disorder, diminution of memory, physical and emotional pain and suffering, and exemplary damages.  Robert also sought damages for lost wages while caring for Gina at home. 

The trial began on August 13, 2002 and spanned five days, during which Appellants presented testimony in support of their claims.  John Marcus Wood, Facilities Manager of the Hospital, and his immediate superior, Kent Tucker,  testified regarding security services provided by the Hospital and criminal activity on the premises.  Appellants also presented testimony of former employees regarding incidents of crime or assaults on the Hospital premises. Appellants relied on the expert testimony of Stephen R. Bell, formerly employed for thirty-four years by the City of Dallas as a police officer and now employed as a security consultant with the International Association of Chiefs of Police and the Texas Department of Criminal Justice. 

Appellants rested on August 19, 2002, subject to calling Gina’s treating psychologist.  The Hospital then moved for a directed verdict on seven grounds:  (1) exclusivity of worker’s compensation insurance as Appellants’ sole remedy; (2) no clear and convincing evidence of malice to support exemplary damages; (3) no cause of action in Texas for breach of implied warranty of safety of the premises; (4) no evidence of negligent misrepresentations of safety of the premises; (5 and 6) no evidence of  cause-in-fact or foreseeability as the two elements of proximate cause to support Appellants’ cause of action for negligence; and (7) no cause of action for lost wages of Robert. 

The following morning, August 20, 2002, Appellants moved to reopen and for a mistrial.  The trial court overruled those motions and granted the Hospital’s motion for directed verdict on all grounds presented, except the worker’s compensation exclusivity defense.  Following rendition of judgment, Appellants filed a motion for new trial and for sanctions, which the trial court denied after a hearing.

II.  THE DIRECTED VERDICT

A directed verdict is proper when no evidence of probative force raises a fact issue on the material questions in the suit. 
 Prudential Ins. Co. v. Fin. Review Servs., Inc.
, 29 S.W.3d 74, 77 (Tex. 2000); 
Ray v. McFarland,
 97 S.W.3d 728, 730 (Tex. App.—Fort Worth 2003, no pet.); 
see also
 T
EX
. R. C
IV
. P. 268.  A directed verdict for a defendant may be proper if (1) the plaintiff fails to present evidence raising a fact issue essential to the plaintiff’s right to recover or (2) the evidence conclusively establishes a defense to the plaintiff’s cause of action. 
 Prudential Ins. Co., 
29 S.W.3d at 77.  

In reviewing a directed verdict, we view the evidence in the light most favorable to the party against whom the verdict was rendered, disregard all evidence and inferences to the contrary, and give the nonmovant the benefit of all inferences arising from the evidence.  
Szczepanik v. First S. Trust Co.,
 883 S.W.2d 648, 649 (Tex. 1994); 
Qantel Bus. Sys. V. Custom Controls
, 761 S.W.2d 302, 303-04 (Tex. 1988).  If we determine that any evidence, more than a scintilla, raises a fact issue on any material question presented, then the directed verdict is improper.  
Dow Chem. Co. v. Francis, 
46 S.W.3d 237, 242 (Tex. 2001);
 Szczepanik
, 883 S.W.2d at 649; 
Coronado v. Schoenmann Produce Co.
, 99 S.W.3d 741, 746 (Tex. App.—Houston [14
th
 Dist.] 2003, no pet.), 
disapproved in part on other grounds by
 
Wingfoot Enters.v. Alvarado
, 111 S.W.3d 134, 149 (Tex. 2003) .  More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.  
Minyard Food Stores v. Goodman
, 80 S.W.3d 573, 577 (Tex. 2002).

A.  Negligence

In their first issue, Appellants complain that the trial court erred in granting the directed verdict based on no evidence of the foreseeability component of proximate cause as to their alleged negligence.  
Appellants recognize that their cause of action for negligence is based upon premises liability for failing to remedy an unreasonable risk of harm due to a condition of the premises.  
See Timberwalk Apartment Partners, Inc. v. Cain
, 972 S.W.2d 749, 757 (Tex. 1998) (holding a complaint that an owner failed to provide adequate security against criminal conduct is ordinarily a premises liability claim). 

Liability in negligence requires a duty, breach of the duty, and damages proximately caused by that breach.  
Doe v. Boys Club of Greater Dallas, Inc
., 907 S.W.2d 472, 477 (Tex. 1995); 
Greater Houston Transp. Co. v. Phillips
, 801 S.W.2d 523, 525 (Tex. 1990).  Preliminarily, we note that, as an employee of the Hospital, Gina would be classified as an “invitee” on its premises.  
Guerrero v. Mem’l Med. Ctr. of E. Tex.
, 938 S.W.2d 789, 791 (Tex. App.—Beaumont 1997, no pet.) (citing 
Hernandez v. Heldenfels
, 374 S.W.2d 196, 197 (Tex. 1963)).  An owner or occupier in control of premises generally must exercise reasonable care to make the premises safe for the use of invitees.
  Lefmark Mgmt. Co. v. Old
, 946 S.W.2d 52, 53 (Tex. 1997).
  Ordinarily, this duty does not include preventing criminal acts of third parties over whom the premises owner has no control
.  Id.; see also Timberwalk, 
972 S.W.2d at 756;
 Walker v. Harris, 
924 S.W.2d 375, 377 (Tex. 1996);
 Exxon Corp. v. Tidwell, 
867 S.W.2d 19, 21 (Tex. 1993)
.
  An exception is that an owner or occupier of land does have a duty to protect invitees from criminal acts of third parties if it knows or has reason to know of an unreasonable and foreseeable risk of harm.  
Timberwalk
, 972 S.W.2d at 756; 
Lefmark
, 946 S.W.2d at 53; 
Centeq Realty Co. v. Siegler
, 899 S.W.2d 195, 197 (Tex. 1995).

The Hospital contends that the trial court granted the directed verdict as to negligence based not only on there being no evidence of foreseeability, but also because Appellants failed to produce any evidence of cause-in-fact.  The Hospital points out that because Appellants have not complained of error in granting the directed verdict on the element of cause-in-fact, we may uphold the directed verdict on negligence on the basis that Appellants failed to produce any evidence of cause-in-fact. 

In their reply brief, Appellants disagree with the Hospital’s characterization of the trial court’s basis for the directed verdict, contending the trial court limited its directed verdict to foreseeability, not cause-in-fact, and that it could not have granted the directed verdict on cause-in-fact because it would have been reversible error to do so when Appellants had only rested “subject to” calling their treating psychologist.  Appellants argue that the treating psychologist could have furnished opinions as to causation of Gina’s injuries.  Appellants correctly argue that it is generally reversible error to grant a directed verdict before a plaintiff has rested.  
See, e.g., Wedgeworth v. Kirksey
, 985 S.W.2d 115, 116-17 (Tex. App.—San Antonio 1998, pet. denied) (refusing to apply harmless error test for directed verdict before plaintiff had rested); 
Nassar v. Hughes
, 882 S.W.2d 36, 37 (Tex. App.—Houston [1
st
 Dist.] 1994, writ denied); 
Buckner v. Buckner
, 815 S.W.2d 877, 878 (Tex. App.—Tyler 1991, no writ).

We may uphold a directed verdict
 
even if the trial court’s rationale was erroneous, provided the directed verdict can be supported on another basis.  
Kingston v. Helm
, 82 S.W.3d 755, 758 (Tex. App.—Corpus Christi 2002, pet. denied); 
Exxon Corp. v. Breezevale Ltd.
, 82 S.W.3d 429, 442-43 (Tex. App.—Dallas 2002, pet. denied).  We find three flaws in Appellants’ argument concerning the element of cause-in-fact—all of which are fatal.  First, Appellants never complained in the trial court that the directed verdict was error on the ground that it was granted before they had fully rested.  Therefore, we conclude that any such complaint was not preserved for review.  
See
 
Tex. R. App. P
. 33.1.

Second, we agree with the Hospital that there was no evidence on the component of cause-in-fact.  The premises owned by the Hospital are located off of Interstate 35 in south Fort Worth, comprising approximately 279 acres, including a tower with patient rooms, an emergency facility, a retirement center, a hospice house, a fitness center, and parking areas, all of which are approached by entering the property on Medpark Drive, the road on which Gina was allegedly accosted and abducted.  Gina advised the police investigating the incident that the men who abducted her came from the general direction of a deep creek with a twenty-foot embankment behind the patient tower, beyond which lay rough terrain and a plowed field, with the next road over a mile and a half away. 

Wood, the Hospital’s facilities manager, was in charge of security of the grounds and premises safety.  Wood testified that the Hospital contracted with Smith Security Agency for unarmed security by providing a foot patrol for the buildings and a driving patrol for the parking lots, taking care of access, escorting employees to their cars if requested, securing doors, and reporting daily to him.  Wood issued “post orders” to define their duties.  In addition, the Hospital employed off-duty police officers, stationed primarily in the emergency room area or the tower, but who were available to go where needed, and also provided video surveillance in the emergency room area and the driveway to that facility. 

The only testimony bearing on the element of cause-in-fact came from Appellants’ security expert, Stephen Bell.  Bell had reviewed the reports of the security agency that the Hospital contracted with, as well as the depositions of Wood and Tucker and Wood’s orders for security, and testified that, in his opinion, the security level was “inadequate” on the date in question.  He further testified as follows:

Q. Now, are you telling the jury that if they had an adequate level of security, that this incident would not have occurred?

A. No.  I’m not suggesting that there is going to be a guarantee on any of this. 

Bell never testified that additional security measures would have probably prevented the alleged abduction.  To the contrary, he declined to so state, and further agreed on cross-examination that there is no security system that would protect a woman who allows gang members to flag down her vehicle and then opens her door to them.  We agree that there was no evidence establishing that it was more probable than not that Gina would not have been injured had there been additional safety precautions.  
See, e.g., Havner v. E-Z Mart Stores, Inc.
, 825 S.W.2d 456, 459 (Tex. 1992) (three experts testified employee probably would be alive had employer provided proper security); 
Dickinson-Arms-REO, L.P. v. Campbell
, 4 S.W.3d 333, 341 (Tex. App.—Houston [1
st
 Dist.] 1999, pet. denied) (expert testimony established additional security measures probably would have prevented attack); 
Lincoln Prop. Co. v. DeShazo, 
4 S.W.3d 55, 59 (Tex. App.—Fort Worth 1999, pet. denied) (expert testified presence of additional security guards probably would have prevented attack).

Thirdly, Appellants have not attempted to add an issue on appeal complaining of error in granting the directed verdict on cause-in-fact, but merely argue in their reply brief the fact that they had not fully rested as a 
reason
 why the court could not have granted the directed verdict on cause-in-fact and, therefore, did not need to be challenged.  Having reviewed the reporter’s record and the clerk’s record regarding the bases for the directed verdict, it is clear that the trial court could have granted the directed verdict as to Appellants’ negligence cause of action on either the foreseeability element or the cause-in-fact component of proximate cause.
(footnote: 2)  Because Appellants have waived any ground of error on appeal based on the trial court’s having granted the directed verdict before they fully closed by failing to raise the issue on appeal, the directed verdict on the negligence cause of action may be upheld on the unchallenged ground of no evidence of cause-in-fact.  
See
 
Tex. R. App. P
. 38.3; 
Penley v. Westbrook
, No. 2-02-260-CV, 2004 WL 1119361, at *4 (Tex. App.—Fort Worth May 20, 2004, no pet. h.) (holding Appellant waived appellate issues by only briefing them in her reply brief).

 B. Breach of Implied Warranty

By the second subpart of their first issue, Appellants complain of the directed verdict on their claim for breach of implied warranty of safety.  Appellants cite no precedent for recognizing an implied warranty to the public to keep premises safe, nor are we inclined to create one, given the availability of an adequate remedy to an invitee, either as a member of the public or as an employee, through the existing cause of action in Texas for premises liability based on negligence.  
See Dennis v. Allison
, 698 S.W.2d 94, 96 (Tex. 1985); 
Codner v. Arellano
, 40 S.W.3d 666, 672 (Tex. App.—Austin 2001, no pet.) (“It is not necessary to impose an implied warranty as a matter of public policy if the plaintiff has other adequate remedies to redress the alleged wrongs committed by the defendant.”); 
Humble Nat’l Bank v. DCV, Inc
., 933 S.W.2d 224, 239 (Tex. App.—Houston [14
th
 Dist.] 1996, writ denied).  Further, we agree with those courts that have rejected the existence of an implied warranty of safety.  
See, e.g., Henry v. Cullum Cos
., 891 S.W.2d 789, 796 (Tex. App.—Amarillo 1995, writ denied) (rejecting claim of breach of implied warranty of safe place to shop under DTPA in a slip-and-fall case because “the use of the floors[] is not within the DTPA’s definition of ‘services’”); 
see also Gonzalez v. Mountain Valley Apartments
, No. 05-99-01042-CV, 2000 WL 1201774, at *4-5 (Tex. App.—Dallas 2000, pet. denied) (not designated for publication)
(footnote: 3) (rejecting claim for breach of implied warranty of habitability for personal injuries by tenants shot in parking lot).

A directed verdict may be proper when the substantive law does not permit the plaintiff to recover on a cause of action.  
See S.V. v. R.V.,
 933 S.W.2d 1, 8 (Tex. 1996) (holding directed verdict proper where statute of limitations barred cause of action); 
Arguelles v. U.T. Fam. Med. Ctr
., 941 S.W.2d 255, 258 (Tex. App.—Corpus Christi 1996, no writ) (holding directed verdict proper because Texas does not recognize “loss of chance” claim in medical malpractice suit).  Accordingly, we hold the trial court properly granted the directed verdict based on the lack of a recognized cause of action for breach of implied warranty.  We overrule Appellants’ their first issue.

III.  MOTION TO REOPEN AND FOR MISTRIAL

AND MOTION FOR NEW TRIAL 

In their second issue, Appellants complain that the trial court abused its discretion in overruling their motion to reopen and motion for mistrial.  In their third issue, Appellants complain that the trial court abused its discretion in failing to order a new trial and sanctions against the Hospital’s representatives, including its risk manager and its counsel, on the same grounds.  Therefore, we will consider Appellants’ second and third issues together.

A. Motion to Reopen

After hearing the Hospital’s motion for directed verdict, the trial court advised counsel that it was inclined to grant the directed verdict but would not announce its ruling until the following morning.  The next morning, August 20, 2002, Appellants moved to reopen, not to present testimony from Gina’s psychologist—the witness whom they had rested subject to calling—but to present testimony of two nurses employed by the Hospital, Michele Love and Carolyn Rogers, both of whom had attended to Gina as a patient after the attack.  Appellants’ counsel advised the court that he had discovered information only the previous evening concerning those two witnesses. 

Appellants’ counsel stated in arguing their motion to reopen that, although he had conversed with Nurse Love the week before trial, and she had expressed a willingness to testify, she had not appeared, and he had only the night before been able to contact Nurse Love again.  According to Appellants’ counsel, he had subpoenaed her and she could not appear until the following day, but she would testify as to Gina’s condition regarding bruises on her arms, that she and other nurses were aware of inadequate security at the Hospital and did not feel safe, and that she was aware of at least two prior incidents near the time of the occurrence involving Gina—one involving a male individual brandishing a knife in the maternity ward and the other involving a young Hispanic male found looking for syringes in the storage area.  Appellants’ counsel further stated that Nurse Love had informed him that Nurse Rogers would confirm her testimony regarding the security issues, but he had not yet contacted Nurse Rogers.  

   
Motions to reopen are allowed when it “clearly appears to be necessary to the due administration of justice” at any time; provided that in a jury case no evidence may be allowed on a controversial matter after the jury’s verdict.  
Tex. R. Civ. P
.  270.  The party seeking to reopen must show:  (1) due diligence was exercised in obtaining the evidence; (2) the new evidence is “decisive”; (3) allowing additional evidence will not cause undue delay; and (4) allowing the additional evidence will not cause injustice.  
Lopez v. Lopez, 
55 S.W.3d 194, 201 (Tex. App.—Corpus Christi 2001, no pet.); 
Ex parte Stiles
, 950 S.W.2d 444, 446-47 (Tex. App.—Waco 1997, no pet.); 
see also In re S.L.M
., 97 S.W.3d 224, 230 (Tex. App.—Amarillo 2002, no pet.).  The decision to allow a party to reopen is ordinarily within the sound discretion of the trial court.  
Lopez, 
55 S.W.3d at 201; 
In re Hawk,
 5 S.W.3d 874, 877 (Tex. App.—Houston [14
th
 Dist.] 1999, no pet.).  The trial court should liberally exercise its discretion in favor of allowing both sides to fully develop the case. 
 Lopez
, 55 S.W.3d at 201.

Appellants urge that the trial court abused its discretion in failing to allow them to reopen, because the evidence was material, significant and, therefore, “decisive.”  Appellants also contend that, because of the Hospital’s overt efforts to conceal the evidence at issue, they exercised due diligence in promptly bringing the discovered evidence to the trial court’s attention the morning after it was discovered, which was the evening of the day the Hospital sought the directed verdict.  Appellants maintain that there would have been no undue delay, and the trial court should have exercised its discretion to allow Appellants to reopen in the interest of justice.

Appellants assert that the testimony of Nurse Love and Nurse Rogers would have been material and decisive on the issue of foreseeability, in that Nurse Love would have testified that she and other nurses were “aware” of inadequate security at the Hospital, that the lack of security had become the brunt of jokes among the nurses, and that she had personal knowledge of the two security incidents near in time to the occurrence involving Gina.  Appellants contend that Nurse Rogers would confirm Nurse Love’s testimony.

The Hospital responds that the evidence sought to be offered met none of the criteria for allowing a party to reopen.  It was not decisive, the Hospital did not conceal evidence, and Appellants failed to use due diligence, so the trial court did not abuse its discretion in refusing to allow Appellants to reopen.
(footnote: 4)  We agree with the Hospital that the testimony of Nurse Love and Nurse Rogers would not have been decisive.

The affidavit of Nurse Love regarding a bruise on Gina’s arm would have been relevant to whether she was, in fact, abducted.  However, whether she was abducted was not at issue on the motion for directed verdict.  The two security incidents about which she would have testified would have been cumulative of other incidents described by the facilities manager and former employees, incidents occurring inside the hospital, not in the parking lots and not on Medpark Drive.  Additionally, while Nurse Love indicated these events occurred near the time of Gina’s alleged abduction, there was no evidence as to whether they occurred
 prior
 to that event.  As such, they would not have been probative on the issue of foreseeability.  
Timberwalk
, 972 S.W.2d at 756 (holding foreseeability requires evidence of specific incidents of
 prior
 similar criminal activity).  As to Nurse Love’s expressed concern for safety and her statement that other nurses felt unsafe, there is no evidence as to whether these concerns were based upon actual incidents of crime that occurred before Gina’s alleged abduction or as to whether they were made known to the Hospital.   Moreover, as subjective, lay opinions, they would not have been admissible or probative on the issue of the adequacy of the level of security, much less on the issue of foreseeability, and Appellants do not contend that Nurse Love would have provided testimony relevant to the element of cause-in-fact.

There was no affidavit from Nurse Rogers or any offer of proof of her proposed testimony, other than counsel’s offer of proof that it would “confirm” that of Nurse Love.  The same inadequacies inhere in that evidence, such that we must conclude that neither nurse’s testimony was “decisive” on the issues of foreseeability or cause-in-fact.  Consequently, it is unnecessary to address the other criteria for allowing a party to reopen.  We hold that the trial court did not abuse its discretion in overruling the motion to reopen.  
See Alkas v. United Sav. Ass’n
, 672 S.W.2d 852, 860 (Tex. Civ. App.— Corpus Christi 1984, writ ref’d n.r.e.) (finding no abuse of discretion where evidence not “decisive”).

B. Motion for Mistrial 
   
 

Appellants presented and argued their motion for mistrial together with their motion to reopen.  The motion for mistrial appears largely to have been based upon asserted discovery abuse by the Hospital in (1) failing to properly respond to or supplement discovery requests regarding Nurse Love’s knowledge and, instead, overtly acting to conceal her knowledge; (2) failing to furnish evidence of security complaints during the three years prior to the alleged abduction; (3) restricting Appellants’ counsel’s ability to talk to Hospital employees; (4) presenting inaccurate or even perjured testimony regarding dates of contact by the Hospital’s risk manager, Diane Reynolds, with Nurse Love; and (5) the Hospital’s counsel improperly communicating with jurors. 

It appears from the record that Appellants were aware of the basis for the first three of these five complaints prior to trial and could have sought relief from the trial court but chose not to do so.  As to insufficient discovery responses, the record reveals that, at a hearing in January 2002, some seven months before the case went to trial in August, counsel for Appellants agreed to accept “a brief synopsis” of the relevant facts known by the persons that the Hospital had listed as having knowledge.  Thereafter, in February 2002, still some six months before trial, the Hospital furnished its amended responses to Appellants’ discovery requests and included summaries of the substance of the relevant facts and listed the persons having knowledge of such facts.  Among its responses, the Hospital included a half page, single-spaced list of facts about which Nurse Love had knowledge. 

Appellants apparently made no further complaint until the motion for mistrial after trial was concluded, although the record reveals they also knew prior to trial that Nurse Love had additional information beyond what was contained in the summaries of her knowledge of relevant facts furnished by the Hospital.  We note that the facts listed in the Hospital’s response included many of the details about which Appellants complained in the motion for mistrial, including that Gina had bruises and that she seemed to have no memory of her husband and children, facts that would support Gina’s version of the occurrence. 

During trial in mid-August 2002, outside the presence of the jury, Appellants’ counsel acknowledged that, while the original attorney for the Hospital had believed he had no right to talk to Hospital employees, once the Hospital’s representation was taken over by new counsel, that attorney agreed that he had such a right, and he said, “I did.”  The record reveals that Appellants’ counsel thus made contact with Nurse Love on August 5, 2002, approximately two weeks before trial, that she “freely” spoke with him by telephone and in person, and that he learned before trial that she had knowledge of facts in addition to those disclosed by the Hospital, including that she saw a thumbprint bruise on Gina’s arm and that she and other nurses had concerns about inadequate safety on the premises and had joked about the security guards. 

Appellants were essentially seeking sanctions in the form of a mistrial after trial was concluded and after the trial court had announced its intention to grant a directed verdict.  But the Hospital points out and the record confirms that Appellants knew before trial of the additional information possessed by Nurse Love.  The failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct.  
Cathey v. Meyer
, 115 S.W.3d 644, 672 (Tex. App.—Waco 2003, pet. filed) (quoting 
Remington Arms Co. v. Caldwell
, 850 S.W.2d 167, 170 (Tex. 1993)); 
Finlay v. Olive
, 77 S.W.3d 520, 526 (Tex. App.—Houston [1
st
 Dist.] 2002, no pet.).  Appellants could have sought further relief from the trial court or they could have taken Nurse Love’s deposition before or even during trial. Additionally, they subpoenaed her for trial and yet rested without calling her, and they did not call her as a witness at the hearing on their motion for mistrial.  We agree with the Hospital that Appellants waived any entitlement to sanctions for incomplete discovery responses, including Nurse Love’s (and Nurse Rogers’s) knowledge of additional relevant facts. 
 See Remington
, 850 S.W.2d at 170.

Regarding Appellants’ complaint that the Hospital failed to produce incident reports regarding security issues, any such failure likewise appears from the record to have been apparent to Appellants before trial.  Indeed, the record shows that reports were furnished to Appellants in February 2002, approximately six months before trial.  Counsel for Appellants acknowledges he received 3,707 pages of security reports at that time, complaining only that they were “dumped” and “disorganized.”  Appellants thus knew at that time whether the documents furnished were not sufficient but chose to wait until the eve of the directed verdict to object.  We are compelled to agree with the Hospital that this basis for Appellants’ motion for mistrial is likewise waived.  
Id
.

As to Appellants’ complaint that they were prevented from talking to Hospital employees, Appellants’ counsel candidly acknowledged at a hearing on August 16, 2002, during trial but outside the presence of the jury, that he knew those employees
 
had been instructed not to talk to him by the Hospital’s prior counsel—months before trial—but admitted that the Hospital’s current counsel agreed that they could talk to Appellants’ counsel and that he had done so prior to trial.  As we have previously noted, Appellants’ counsel did contact Nurse Love prior to trial and she spoke “freely” with him.  Thus, it appears that Appellants’ complaint about being prevented from speaking with Hospital employees, and specifically Nurse Love, is likewise waived.

The remaining two grounds for the motion for mistrial concern conduct of counsel for the Hospital and its risk manager, Diane Reynolds, during trial.  In reviewing the denial of a mistrial on these grounds, we apply an abuse of discretion standard.  
Fiore v. Fiore
, 946 S.W.2d 436, 437 (Tex. App.—Fort Worth 1997, writ denied).  Appellants’ counsel related that, while Nurse Love had initially agreed to appear and testify at trial, she did not appear and he had not been able to find her until after the trial court announced its intention to grant the directed verdict, at which time she told him she was advised again over the weekend during trial by the Hospital’s risk manager, Diane Reynolds, not to talk to him but to refer all questions to counsel for the Hospital.  Appellants pointed out that this was contrary to Diane Reynolds’s testimony outside the presence of the jury during trial that she had not seen or spoken to Nurse Love for “maybe a year, perhaps eighteen months.”  Nurse Love also told Appellants’ counsel that she was contacted by counsel for the Hospital over the weekend during trial and felt pressure from him that he would discredit her if she testified. 

Counsel for the Hospital acknowledged that he visited Nurse Love over the weekend during trial, but he told the trial court that he only advised her that if she were subpoenaed she had to “honor it,” and if she did not feel well enough to attend she would need to fax him a note from her doctor to present to the court.  He denied pressuring her but further acknowledged that he had told her he would have to question her on cross-examination, if she testified she observed a bruise mark on Gina’s arm, as to why she did not chart her observation.

Finally, Appellants’ motion for mistrial complained of improper contact by the Hospital’s counsel with two jurors.  Appellants’ counsel told the court that he had come upon counsel for the Hospital conversing with two jurors in the hall outside the courtroom that morning.  In response to questioning by the trial court, counsel for the Hospital acknowledged that he had overheard two jurors  in the hallway talking about the Little League World Series and “if there was a dialogue” involving comments by him, it was about that subject.  The trial court then questioned the jurors, two of whom acknowledged having a conversation with the Hospital’s counsel that morning, the gist of which was not about the case, they said, but an exchange of incidents about working for the railroad in Spring, Texas, and dry heat versus humidity. 

Diane Reynolds was not called to testify at that time, nor did Nurse Love testify.  There was no indication why Nurse Love had refused to appear or testify either at trial or at the hearing on the motion for mistrial and no representation that her absence was caused by any action by Reynolds or the Hospital’s counsel.  Moreover, neither their actions nor whether  Reynolds had been untruthful about her contact with Nurse Love during the trial had any bearing on the merits of this case.  The contact by counsel with the jurors took place after the Hospital had moved for directed verdict, and the only further proceeding in the trial was the hearing on Appellants’ motions to reopen and for mistrial, after which the trial court overruled those motions, granted the directed verdict, and released the jury.  

After hearing the motion for mistrial on the ground of improper communication between jurors and the Hospital’s counsel, the trial court stated:

The Court has examined the jurors and questioned them and their statements are on the record.  The Court finds that Mr. Laser and those two jurors did indeed violate the Court’s instructions about not having conversations with each other.  The Court is quite disappointed that this has taken place.  However, the Court does not find that that misconduct rises to a level where a mistrial should be granted, so motion for mistrial is denied.

As to the conversations with Ms. Love and the allegations of intimidation, there are other remedies which may be explored as plaintiffs’ counsel sees appropriate.  That’s for another time.  . . . There are other remedies. 

The trial court had broad discretion in determining whether to grant a mistrial.  
Fiore
, 946 S.W.2d at 437;
 Astec Indus., Inc. v. Suarez,
 921 S.W.2d 794, 798 (Tex. App.—Fort Worth 1996, no writ).  A trial court abuses its discretion when it acts without reference to any guiding rules or principles or is arbitrary or unreasonable.  
Fiore
, 946 S.W.2d at 437 (citing 
Downer v. Aquamarine Operators, Inc
., 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied,
 476 U.S. 1159 (1986)).  However, merely because a trial court decides a matter within its discretion differently than an appellate court would under the same circumstances does not demonstrate an abuse of discretion.  
Downer
, 701 S.W.2d at 241-42.  Thus, where the issue involves a factual question or dispute, or a matter committed to the trial court’s discretion, the appellate court may not substitute its judgment for that of the trial court.  
Walker v. Packer, 
827 S.W.2d 833, 840 (Tex. 1992).  Because the case was never submitted to the jury and because, as recognized by the trial court, other remedies were available concerning Appellants’ allegations that the Hospital’s counsel and risk manager intimidated Nurse Love, we cannot conclude that the trial court abused its discretion in denying the motion for mistrial on either of these two final grounds.

C. Motion for New Trial

Appellants’ motion for new trial, in addition to complaining that the evidence raised fact issues on foreseeability, reiterated the issues previously raised in their motion to reopen and for mistrial and further sought such sanctions as might be deemed appropriate by the court against the Hospital’s representatives, including Diane Reynolds, and its counsel.  The motion for new trial was accompanied by transcripts of the earlier hearings on the motion to reopen and for mistrial and Diane Reynolds’s earlier testimony.

At the hearing on the motion for new trial, the only new evidence was an affidavit from Nurse Love and Diane Reynolds’s testimony.  Nurse Love’s affidavit confirmed her proposed testimony as previously outlined by Appellants’ counsel to the court, but provided additional details.  Appellants again urged that Nurse Love was intimidated or pressured by the Hospital’s counsel not to testify, and we note that she stated in her affidavit attached to the motion for new trial that she “detected an overt effort to pressure” from that attorney.  However, she also averred that she would “refuse” to be pressured not to testify.  Appellants’ counsel called Diane Reynolds to testify, and she admitted that her previous testimony during trial outside the presence of the jury, stating that she had not spoken to Nurse Love in the last year to eighteen months was “inaccurate,” in that she had spoken with her the previous week. 

The trial court had previously heard Appellants’ counsel’s account of his conversation with Nurse Love regarding this matter and had also heard the Hospital’s counsel’s account of his meeting with her.  The court also had the benefit of observing the demeanor and hearing the conflicting testimony of Reynolds at both hearings.  With respect to all of these facets of the issues regarding the asserted hindrance of Appellants’ counsel from obtaining Nurse Love’s testimony, we conclude that the trial court could have reasonably determined that the circumstances did not present grounds for sanctions in the form of a new trial against the Hospital or other sanctions against Reynolds and the Hospital’s counsel.  We further conclude that the trial court did not abuse its discretion in overruling Appellants’ motion for new trial.  
See
 
Marvelli v. Alston
, 100 S.W.3d 460, 470 (Tex. App.—Fort Worth 2003, pet. denied) (holding trial court did not abuse its discretion in denying doctor’s request for new trial as a sanction for alleged threats made against witnesses).

Appellants correctly note that the trial court may grant a new trial in the interest of justice, or for no reason at all.
  See Champion Int’l Corp. v. 12th Court of Appeals
, 762 S.W.2d 898, 899 (Tex. 1988) (orig. proceeding).  We cannot conclude that any conduct of the Hospital or its counsel in this case so tainted the merits of the case or the proceedings as to require a new trial in the interest of justice, or that the trial court abused its discretion in not granting a new trial under the circumstances presented to it in this difficult and hard-fought case.  We overrule Appellants’ second and third issues.

IV.  CONCLUSION

Having overruled Appellants’ three issues, we affirm the judgment of the trial court that Appellants take nothing.

ANNE GARDNER

JUSTICE

PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.

WALKER, J. concurs without opinion.

DELIVERED:  July 29, 2004

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
The court’s order states that Appellees moved for directed verdict as to Appellants negligence claims on the elements of cause-in-fact and foreseeability, and the order further states, “The Court found that [Appellants’] evidence did not raise a genuine issue of fact on one or more of the elements of their claim[] of negligence. 

3:
See
 
Tex. R. App. P
. 47.7 (providing that unpublished cases may be cited, although they have no precedential value).

4:
Because we rest our decision on the lack of the material and decisive nature of the proffered testimony, we will address Appellants’ complaint that the Hospital “concealed” the evidence in connection with Appellants’ motion for mistrial and for sanctions.