Mark Alan **ALEXANDER**, Appellant,

v.

Brenda Sue **ALEXANDER**, Appellee.

No. 01–97–01193–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 2, 1998.

---

Kenneth H. Keeling, Huntsville, for appellant.

Ann Bramlett, Huntsville, for appellee.

Before O'CONNOR, TAFT and B.A. SMITH, JJ.[*]

## OPINION

O'CONNOR, Justice.

Mark Alexander, the appellant here and respondent below, appeals from the trial court's granting of spousal support to his ex-wife, Brenda Alexander, the appellee here and petitioner below. We affirm.

## Background

Mark and Brenda were married in 1983 and separated in April 1997. Brenda filed suit for divorce in the spring of 1997. On the day of trial, August 18, 1997, Brenda asked for and received leave to file an amended petition, seeking spousal support while she completed her college education.

The trial court found Mark at fault for the divorce. It found Mark and Brenda agreed during the marriage that she would stay at home while the children were small, and that Brenda has few skills for jobs other than those paying minimum wage. The trial court concluded the following: the marriage lasted more than 10 years; Brenda lacked sufficient property to provide for her minimum reasonable needs; she clearly lacked earning ability adequate to provide for her minimum reasonable needs; she diligently sought suitable employment and to develop skills to become self-supporting before and during the divorce suit; and she was eligible for spousal maintenance under section 3.9602 of the Family Code.[1] Mark was ordered to pay $575 a month (which is 20 percent of his monthly income) in spousal support until May 2000.

## Analysis

Mark appeals, claiming Brenda has not met the requirements of section 3.9602(2), which authorizes the award of spousal maintenance in limited circumstances.

When a divorce is sought in a marriage lasting 10 years or more, a spouse may seek spousal maintenance under the Family Code. To be eligible for spousal maintenance, the spouse seeking support must lack sufficient property to meet her minimum reasonable needs and must show she cannot support herself (1) due to a disability, or (2) because she must care for a child with a disability and requiring substantial care and supervision, or (3) she "clearly lack[s] earning ability in the labor market adequate to provide support for [her] minimum reasonable needs." TEX. FAM. CODE §8.002(2) (1998). Generally, there is a presumption that maintenance is not warranted unless the spouse is seeking suitable employment or is developing skills necessary to become self-supporting while the spouses are separated and the divorce suit is pending. TEX. FAM.CODE §8.004(a) (1998).

If a trial court determines a spouse is eligible for spousal support, it shall determine the amount and duration of the support by considering all relevant factors, including the financial resources of both spouses; medical, retirement, insurance, or other benefits; the education and employment skills of both spouses; time required for the spouse seeking support to acquire sufficient education or skills to support herself; the length of the marriage; the age, employment history, earning ability, and health of the spouse seeking support; the ability of the spouse from whom support is sought to provide for his or her needs, child support, and spousal support; and a spouse's contribution as a homemaker. TEX. FAM.CODE §8.003 (1998).

## Facts

After Brenda and Mark married in 1983, she worked for a semester and a half while

---

[*] The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. Act of May 26, 1995, 74th Leg., R.S., ch. 655, §10.02, 1995 Tex. Gen. Laws 3543, 3578, *amended by* Act of April 3, 1997, 75th Leg., R.S., ch. 7,

§1, 1997 Tex. Gen. Laws 8, 34. Section 3.9602 was changed slightly and renumbered as section 8.002 in April 1997. Brenda amended her pleadings to request spousal support after section 8.002(2) became effective. We will refer to the recodified sections of the Family Code.

he went to school. She stopped working in March 1984, because she had trouble with her pregnancy. To complete the remaining semester and a half he needed for his degree, Mark sold cars and worked for his father over the summer, and took out a loan for the fall semester.

Brenda testified that when she and Mark married, she had 19 hours of college credit. At the time they separated, she had 25 hours of college credit and was enrolled in four hours. During the marriage, she stayed home to raise their three children. Their youngest child began school in August 1995, and Brenda began looking for full-time work in September 1995. She applied for between 30 and 45 minimum-wage jobs, but received no offers. She said she was not hired because she was not qualified for the jobs. She said she had few office skills, had taken a typing class in ninth grade, and did some filing in 1981.

In December 1995, Brenda's volunteering at her children's school led her to a job as a substitute teacher. She substituted full-time from December 1996 to May 1997, at $6.00 an hour, earning $733 a month.

Brenda decided to return to school and in January 1996, began taking classes part-time at Montgomery College with a government-funded grant. She is working for a bachelors degree in nursing and plans to graduate in May 2000. Under her degree plan, she needs to take between 12 and 17 hours a semester.

At the time of the hearing, Brenda was taking classes full-time and working at her attorney's office two days a week for $5.15 an hour, minimum wage. On Monday, Wednesday, and Friday, Brenda had classes from 9:00 a.m. to 2:50 p.m., then picked up her children from their school, spent the evening with them until they went to bed, and studied from 10:00 p.m. until 12:00 or 1:00 a.m. On Tuesday and Thursday, she worked from 8:00 a.m. until 3:00 p.m. at her attorney's, picked up the children, and returned to work until 5:00 p.m. She had a 3.90 grade-point average and was a member of an honor society.

Brenda testified that when she first returned to school, Mark did not want her to go, and said she would have to pay for it herself and should get a real job. After they separated, she asked for his help while she finished school, but he said she should quit and get a job. She testified he told her he would quit his job and disappear if he was ordered to pay any spousal support. Brenda asked for maximum spousal support through May 2000, so she could finish her degree.

Brenda has a manicurist license, but said she could not work as a manicurist because she is allergic to acrylic nails. She has not applied for a manicurist job since 1995. Brenda had not applied for jobs other than as a substitute teacher and for her attorney since filing for divorce. She had not applied for other jobs that might pay more than minimum wage since filing for divorce. On cross-examination, Mark's attorney asked Brenda,

Q. Now that's the real problem, isn't it? How can you work when you're going to school full-time?

A. I don't understand what you're asking me.

Q. You don't have time to work because you're going to school too much; isn't that right?

A. Yes, sir. I'm trying to finish.

Brenda decided not to substitute teach any longer because she could only work Tuesdays and Thursdays and the school could not guarantee that she would be called to work on those days. Her work at her attorney's office was definite employment each Tuesday and Thursday. She planned to work for her attorney until she got certified as an emergency medical technician, an EMT, in December or January 1998. As an EMT, she would earn about $7.50 an hour, about $750 a month.

Brenda testified her and the children's monthly expenses were $1,800 a month. She could not continue to go to school if she had to work full-time to try to cover their monthly expenses. If she were to work full-time at minimum wage, earning about $733 a month, other than as a substitute teacher, she would need to pay child care of $100 to $125 a week,

leaving about $400 a month to support herself and her family. Even with child support, spousal support, and her wages, she will be short about $300 a month, but her cousin agreed to loan her money until she finishes school.

## Conclusion

To be eligible for spousal support, Brenda must have shown she clearly lacks earning ability adequate to provide for her reasonable needs. She must also have overcome the presumption against spousal support by showing she had diligently sought suitable employment or, during the time she and Mark were separated and the divorce action was pending, sought to develop skills necessary to allow her to be self-supporting.

Brenda testified she could not make enough money working full-time at minimum wage to cover her expenses. She said she was taking a full load of classes in order to finish her degree quickly and support herself. She found stable employment while she attended classes full-time, both while she and Mark were separated and while the divorce suit was pending. She is seeking to develop skills which will allow her to support herself as soon as she finishes her degree.

The marriage lasted for about 14 years. There was evidence that Brenda lacked sufficient property, including any awarded in the divorce, to provide for her minimum reasonable needs, and that she clearly lacked adequate earning ability to provide for her minimum reasonable needs. *See* TEX. FAM.CODE §8.002(2) (1998). The evidence satisfied the requirements of section 8.002(2) of the Family Code. The trial court did not abuse its discretion by awarding Brenda spousal support while she finishes her education. *See DuBois v. DuBois*, 956 S.W.2d 607, 612 (Tex. App.—Tyler 1997, no pet.).

We overrule Mark's sole issue on appeal.

We affirm the trial court's judgment.