TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00029-CV






Sim Johnson Henry, Appellant



v.



Ann Barry Henry, Appellee






FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT


NO. 18,621, HONORABLE D. V. HAMMOND, JUDGE PRESIDING 







 Sim Johnson Henry appeals from the award of spousal maintenance in favor of his
former spouse, Ann, made in the final judgment of divorce. See Tex. Fam. Code Ann. §§ 8.001-.011 (West 1998) (Fam. Code). In four points of error, Sim contends that the trial court erred
in awarding spousal maintenance because: Ann was not eligible for spousal maintenance; she did
not overcome the presumption against spousal maintenance; all relevant factors were not
considered in determining the nature, amount, duration, and manner of spousal maintenance; and
the period of spousal maintenance should have been limited to the shortest reasonable period
required under the law. We will affirm the trial-court judgment.


Spousal Maintenance


 We review an award of spousal maintenance using an abuse of discretion standard. 
See In re Marriage of Hale, 975 S.W.2d 694, 697 (Tex. App.--Texarkana 1998, no pet.)
(discussing use of abuse of discretion standard by analogizing to review of child support award);
see also Alexander v. Alexander, 982 S.W.2d 116, 118 (Tex. App.--Houston [1st Dist.] 1998, no
pet.); DuBois v. DuBois, 956 S.W.2d 607, 612 (Tex. App.--Tyler 1997, no pet.) (both cases
applying abuse of discretion standard without discussion). A review of the sufficiency of the
evidence is subsumed into the review for abuse of discretion; factual and legal insufficiency of the
evidence are not independent grounds for reversal. Hale, 975 S.W.2d at 697; Doyle v. Doyle,
955 S.W.2d 478, 479 (Tex. App.--Austin 1997, no pet.). A court abuses its discretion when it
acts in an arbitrary and unreasonable manner or when it acts without reference to any guiding
principles. Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). The trier of fact is the sole
judge of the credibility of the witnesses and is permitted to believe or disbelieve any evidence. 
Burtch v. Burtch, 972 S.W.2d 882, 888 (Tex. App.--Austin 1998, no pet.).

 In 1997 the legislature enacted provisions for an award of periodic payments from
the future income of an individual for the support of a former spouse. Fam. Code § 8.001. (1) 
Unless the spouse seeking maintenance has an incapacitating physical or mental disability, there
is a presumption that maintenance is not warranted unless that person is exercising diligence in
seeking suitable employment or developing the necessary skills to become self-supporting. Fam.
Code § 8.004. With limited exceptions, spousal maintenance cannot continue more than three
years after the date it is ordered. Fam. Code § 8.005.

Eligibility

 In points of error one and two, Sim complains that Ann did not establish her
eligibility for spousal maintenance and did not overcome the presumption against the award of
maintenance. The applicable criteria to determine Ann's eligibility for spousal maintenance are:


****




(2) the duration of the marriage was 10 years or longer, the spouse seeking
maintenance lacks sufficient property, including property distributed to the spouse
under this code, to provide for the spouse's minimum reasonable needs, as limited
by Section 8.005, and the spouse seeking maintenance:


****



 (C) clearly lacks earning ability in the labor market adequate to
provide support for the spouse's minimum reasonable needs, as
limited by Section 8.005.



Fam. Code § 8.002(2)(B).

 It is undisputed that the marriage lasted 10 years or longer. Ann was employed. 
She submitted a budget to the court showing a shortfall of $1,038 per month between her net
income of $1,400 per month and her expenses of $2,438. Although Ann received the house in
the property settlement, she also received all of its associated debt, as well as some existing credit
card debt. She received no liquid or income-generating assets to use for short-term support. (2) Ann
worked for an automobile dealer as a secretary. At one time she had worked in automobile sales
on pure commission (no minimum guaranteed salary) but switched to a salaried position in part
at Sim's request because he did not want her to work on Saturdays and in part because of the
stress that commission work placed on her. She said that commission work affected her
emotionally and physically, causing sleeplessness and other ill effects. In her best year on
commission she exceeded her current job's yearly income by approximately two thousand dollars. 
She also had one year in which she earned less. (3)

 She testified that because of divorce proceedings "she was a wreck" emotionally
and was seeing a counselor. Sim moved out during the first part of March 1997. At the end of
the month, he left her a letter informing her of his romantic relationship with a co-worker and of
the trip they were taking to Florida. Although he insisted that their affair had not begun until after
the separation, the court found adultery as well as incompatibility to be reasons for the divorce. (4)

 The trial court had sufficient evidence to find that the property division still left
Ann without enough property to meet her reasonable needs. She was employed. The court could
have determined that, given the emotional stress she had previously experienced with commission
work, and the stress of the divorce, she was working to the extent of her ability and earning as
much as she could at that time. In light of her emotional distress the court could have concluded
that she would need more time to take specific steps concerning her employment, such as deciding
whether to seek additional education or training. We conclude that the trial court did not abuse
its discretion in finding that Ann overcame the presumption against spousal maintenance and in
finding her eligible for such maintenance. We overrule points of error one and two.


Factors in Determining Amount


 In his third and fourth points of error, Sim complains that all relevant factors were
not considered in determining the nature, amount, duration, and manner of spousal maintenance
and that the period of spousal maintenance should have been limited to the shortest reasonable
period required under the law. The trial court awarded $750 a month, one-half to be paid on the
first of the month and the other half on the fifteenth, for a three-year period.

 In setting the nature, amount, duration, and manner of periodic payments, the court
is to consider all relevant factors, including:


(1) the financial resources of the spouse seeking maintenance, including the
community and separate property and liabilities apportioned to that spouse in the
dissolution proceeding, and that spouse's ability to meet the spouse's needs
independently;


(2) the education and employment skills of the spouses, the time necessary to
acquire sufficient education of training to enable the spouse seeking maintenance
to find appropriate employment, the availability of that education or training, and
the feasibility of that education or training;


(3) the duration of the marriage;


(4) the age, employment history, earning ability, and physical and emotional
condition of the spouse seeking maintenance; 


(5) the ability of the spouse from whom maintenance is requested to meet that
spouse's personal needs and to provide periodic child support payments, if
applicable, while meeting the personal needs of the spouse seeking maintenance;


(6) acts by either spouse resulting in excessive or abnormal expenditures or
destruction, concealment, or fraudulent disposition of community property, joint
tenancy, or other property held in common;


(7) the comparative financial resources of the spouses, including medical,
retirement, insurance or other benefits, and the separate property of each spouse;


(8) the contribution by one spouse to the education, training, or increased earning
power of the other spouse;


(9) the property brought to the marriage by either spouse;


(10) the contribution of a spouse as homemaker;


(11) marital misconduct of the spouse seeking maintenance; and


(12) the efforts of the spouse seeking maintenance to pursue available employment
counseling as provided by chapter 304, Labor Code.



Fam. Code § 8.003. We note that the amount of maintenance was well within the statutory
specifications of the lesser of $2,500 or 20 percent of the paying spouse's gross income. Fam.
Code § 8.006. (5) The statute does not assign any weight to any particular factor. We first detail
the evidence and then the conclusions the court could have drawn in considering the specified
factors.

 The marriage lasted seventeen years. No allegation was made that Ann engaged
in any marital misconduct. Although Sim testified that his affair did not start until after he moved
out, he also said that if he had not had an existing relationship of some sort with this other
woman, he probably would still be married to Ann. As noted previously, this evidence helps
explain why Ann's level of emotional distress might have been more incapacitating than under
different circumstances, arguably creating a need for a significant amount of time to deal with
emotional issues before she could address career issues.

 Ann had received an inheritance of $143,778.57 during the marriage. At the time
she received the money, Sim had been unemployed for an unspecified length of time. She was
unsure of the exact amount of debt paid at that time; she estimated maybe $30,000. They bought
two pieces of land, one of which was later sold to pay more debts (including a debt owed by Sim's
mother). Ann testified that her payment of the debts allowed him, once he was working, to put
more money into his 401(k) plan, stock and stock options.

 Ann testified that she was seeking counseling for her emotional state, but provided
no evidence concerning employment counseling per se. Ann was forty-nine. The record is not
developed concerning her past education and employment, other than her work for the automobile
dealer.

 Sim was the manager of a business whose nature was unspecified. It had a
corporate headquarters in Florida. His monthly net income was $3,420. He has large 401(k)
contributions, stock and stock options. He received all of the stock and the majority of the
existing 401(k). He had purchased a Hummer for himself and also was paying for a car for his
daughter. (6)

 In considering all of the evidence, the court could have concluded that Ann would
need a fairly long period of counseling in order for her to come to terms with the divorce, in part
because of the surrounding circumstances. The court could have concluded that continuing in her
current position as a secretary was the most feasible job choice for her at the time of the order. 
The court could have concluded that commission sales were not her strong point and it was not
feasible for her return to that type of employment. He could have concluded that she first was
going to need some time to recover emotionally before she could effectively use any resources
available to her to increase her income.

 The court had evidence from which to find that Sim had derived significant long-term benefits from Ann's inheritance. He could have concluded that Ann's payment of debts
allowed Sim to accumulate assets by making larger 401(k) contributions and by allowing him to
invest more in the stock options and stock that he retained. The court could have concluded that
Sim's long-term benefits and current income level justified an award of spousal maintenance to
Ann.

 After reviewing the record, we conclude that the trial court did not abuse its
discretion in the particulars of its award. We overrule points of error three and four.


Conclusion



 We conclude that the court did not abuse its discretion in awarding Ann spousal
maintenance in the final divorce decree. Having overruled all of Sim's points of error, we affirm
the trial-court judgment.



 



 J. Woodfin Jones, Justice


Before Justices Jones, B. A. Smith and Yeakel


Affirmed


Filed: September 10, 1999


Do Not Publish

1. Act of April 3, 1997, 75th Leg., R.S., ch. 7, sec. 1, §§ 8.001-.011, 1997 Tex. Gen.
Laws 8, 34-37.
2. Ann received an award from her husband's 401(k) and retained her own, smaller, one. 
However, the tax consequences of a withdrawal and the long-term financial consequences render
the liquidity of this asset problematic.
3. Most of the evidence on income was given as net income after deductions for taxes,
social security, insurance and 401(k) plans. In Ann's testimony about her income when she
worked on commission, however, she stated her income in terms of annual gross income. Her
current gross income was $24,000. Her best year on commission was $26,000; her worst,
$22,000.
4. We set out these facts not to suggest the court was considering fault and somehow
"punishing" Sim with the award of spousal maintenance as he suggests in his brief; rather, the
circumstances of the divorce help explain the time frame within which Ann was required to
become self-supporting, as well as her emotional state which might influence her current earning
ability, ability to train for a different job, or ability to change jobs.
5. The court apparently did not figure the spousal maintenance by taking a percentage of
Sim's $5,866.66 gross income "off the top." Rather, the court appears to have considered Sim's
budget showing his gross income, net income and expenses. The amount of spousal maintenance
awarded is less than Sim's surplus of net income minus expenses.
6. This is apparently not Ann's daughter.


an her work for the automobile
dealer.

 Sim was the manager of a business whose nature was unspecified. It had a
corporate headquarters in Florida. His monthly net income was $3,420. He has large 401(k)
contributions, stock and stock options. He received all of the stock and the majority of the
existing 401(k). He had purchased a Hummer for himself and also was paying for a car for his
daughter. (6)

 In considering all of the evidence, the court could have concluded that Ann would
need a fairly long period of counseling in order for her to come to terms with the divorce, in part
because of the surrounding circumstances. The court could have concluded that continuing in her
current position as a secretary was the most feasible job choice for her at the time of the order. 
The court could have concluded that commission sales were not her strong point and it was not
feasible for her return to that type of employment. He could have concluded that she first was
going to need some time to recover emotionally before she could effectively use any resources
available to her to increase her income.

 The court had evidence from which to find that Sim had derived significant long-term benefits from Ann's inheritance. He could have concluded that Ann's payment of debts
allowed Sim to accumulate assets by making larger 401(k) contributions and by allowing him to
invest more in the stock options and stock that he retained. The court could have concluded that
Sim's long-term benefits and current income level justified an award of spousal maintenance to
Ann.

 After reviewing the record, we conclude that the trial court did not abuse its
discretion in the particulars of its award. We overrule points of error three and four.