

CHIEF JUSTICE
JAMES T. WORTHEN

CLERK
CATHY S. LUSK

# TWELFTH COURT OF APPEALS

JUSTICES
SAM GRIFFITH
DIANE DEVASTO

CHIEF STAFF ATTORNEY
MARGARET HUSSEY

Wednesday, November 30, 2005

Mr. J. Kevin Dutton
Tonahill, Hile, Jacobellis, Dutton & Brag
243 N. Austin
Suite 1
Jasper, TX 75951

Mr. Scott W. Stover
950 N Wheeler
Po Box 480
Jasper, TX 75951

Mr. William S. Morian Jr.
P.O. Box 480
Jasper, TX 75951

**RE:** Case Number: 12-04-00128-CV
Trial Court Case Number: 3321

**Style:** Gary B. Stafford
v.
Rosemary D. Stafford

Enclosed is a copy of the Memorandum Opinion issued this date in the above styled and numbered cause. Also enclosed is a copy of the court's judgment.

Very truly yours,

CATHY S. LUSK, CLERK

By: *Katrina McClenny*
Katrina McClenny, Chief Deputy Clerk

CC: Hon. Joe B. Golden Jr.
Hon. Olen Underwood
Ms. Tanya Walker

# NO. 12-04-00128-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *GARY B. STAFFORD,*<br>*APPELLANT* | § | *APPEAL FROM THE FIRST* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *ROSEMARY D. STAFFORD,*<br>*APPELLEE* | § | *SABINE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Gary B. Stafford appeals the trial court's final decree of divorce. In two issues, Gary challenges the trial court's division of community property and award of spousal maintenance to his ex-wife, Rosemary D. Stafford. We affirm.

## BACKGROUND

Gary and Rosemary were married for twelve years but had no children. They owned a long haul trucking business in which Gary was "on the road" most days each month. While Gary drove the truck, Rosemary kept their house, which was situated in a remote area several miles from any neighbors. The sole source of heat for the house was provided by a wood burning stove. There were times when Rosemary had to rely on members of her church to bring her wood. There was some evidence that Gary had physically assaulted Rosemary in the past although he denied it. Further, there was evidence that Rosemary and her daughter did not always get along well, and Gary threatened to kill Rosemary's daughter if she came to their house. In all, Rosemary was somewhat isolated.

Gary's gross income exceeded $100,000 in 2003, but his net income was approximately $33,000. Consequently, the Staffords suffered financial problems and Gary's father took over the management of their finances. Gary's father gave fifty dollars to Rosemary each week. She was to

use this money for all her needs, including maintenance of the household and vehicle, food, and gas. For three to four years, Rosemary was required to plead her case to her father-in-law if she needed more than fifty dollars in any given week. At times, Rosemary relied on people from her church to bring her food, give her a ride, or provide other necessities.

Since 1993, Rosemary has received monthly social security disability checks because she has epilepsy and seizures. She now has fibromyalgia and suffers from panic attacks and anxiety. She is unable to work. However, Medicare pays for some of her medical needs, including prescriptions. After twelve years of marriage, Rosemary left Gary and filed for divorce. Gary suggested that Rosemary was having an extramarital affair, but no evidence was presented in support of the accusation.

On February 12, 2004, the trial court heard the Staffords' divorce case. In the final decree, Gary was awarded the Freightliner truck, Transcraft trailer, Ford pickup, Oldsmobile Cutlass, two catamaran boats, tools, weightlifting equipment, an insurance check in the amount of $5,716.95 for damage to the couple's Chevrolet Blazer, a television, a desk, guns, and all clothing, jewelry, and personal effects in his possession. Additionally, Gary was ordered to pay any debts associated with these possessions, along with all amounts past due on the real property awarded to Rosemary. The trial court also ordered that Gary pay the federal income tax liability owed. Finally, the court ordered Gary to pay Rosemary $368.00 per month for three years as spousal maintenance.

To Rosemary, the trial court awarded the house, most of the appliances and furnishings, an insurance check in the amount of $1,800.00 for items stolen from their house, the Chevrolet Blazer, and all clothing, jewelry, and personal effects in her possession. Rosemary was ordered to pay the mortgage on the house.

This appeal followed.

## DISPROPORTIONATE DIVISION OF PROPERTY AND SPOUSAL MAINTENANCE

In two issues, Gary contends the trial court erred in awarding a disproportionate share of their community property to Rosemary and in awarding spousal maintenance to Rosemary.

## Standard of Review

We review a trial judge's division of property and decision to award spousal maintenance

under an abuse of discretion standard. *See Murff v. Murff*, 615 S.W.2d 696, 698-99 (Tex. 1981) (property division); *Smith v. Smith*, 115 S.W.3d 303, 305 (Tex. App.–Corpus Christi 2003, no pet.) (spousal maintenance). A trial judge abuses his discretion when he acts arbitrarily or unreasonably or without any reference to guiding rules and principles. *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). A trial judge does not abuse his discretion if there is some evidence of a substantive and probative character to support the decision or if reasonable minds could differ as to the result. *In the Matter of Bertram*, 981 S.W.2d 820, 826-27 (Tex. App.–Texarkana 1998, no pet.). Absent a clear abuse of discretion, we do not disturb a trial judge's division of community property or decision to award spousal maintenance. *Murff*, 615 S.W.2d at 698; *Young v. Young*, 609 S.W.2d 758, 762 (Tex. 1980).

## Applicable Law and Discussion – Property Division

In a divorce decree, the judge "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001 (Vernon 1998). Thus, trial judges have wide latitude and discretion in dividing community property. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998); *Murff*, 615 S.W.2d at 700. When dividing community property, the trial judge may consider many factors, including each party's earning capacity, abilities, education, business opportunities, physical condition, financial condition, age, and size of separate estates, as well as any future needs for support, expected inheritance, custody of any children, reimbursements, gifts to a spouse during marriage, excessive community property gifts to others, and wasting of community assets. *Murff*, 615 S.W.2d at 699.

Here, the record shows that Gary's earning capacity is much greater than Rosemary's because Rosemary is disabled and unable to work. Gary presented no evidence showing any medical or physical conditions that would prevent him from continuing to earn a living in his trucking business. Gary's 2003 net income was $33,000. Evidence was presented showing that Gary had a place to live; namely, in the garage apartment at his father's house. There was some evidence that Gary was physically abusive to Rosemary. Further, there was some evidence that Gary emotionally abused Rosemary by verbally abusing her and isolating her from her family and friends. Evidence was presented that Gary sometimes failed to provide sufficient firewood for their home's only source of

3

heat, a wood burning stove, while he was away working.

The record also shows that Rosemary is in poor physical condition, suffering from epilepsy, seizures, fibromyalgia, anxiety, and panic attacks. She has been unable to work for more than ten years. She provided homemaking services to Gary during their marriage. Rosemary receives $552.00 per month in social security disability. Medicaid provides for Rosemary's prescriptions and certain other medical expenses.

After a hearing, the trial judge granted the divorce and divided the community assets and liabilities. The trial judge awarded the house and the corresponding mortgage to Rosemary. The fair market value of the house is $50,000.00 while the debt against it is $29,000.00. Rosemary also received an $1,800.00 insurance check for property stolen when the couple's house was burglarized and the 1995 Chevrolet Blazer. Based on the undisputed evidence presented, the total value of the couple's equity in the property awarded to Rosemary was approximately $28,000.00.

The trial court awarded the trucking company assets to Gary; namely, a Freightliner tractor truck, a Transcraft trailer, various tarps, tie-downs, and tools. The court also ordered Gary to pay any amounts owed on these items. The parties disputed the fair market value of the Freightliner tractor truck, with Rosemary estimating its value to be $50,000.00 and Gary estimating its value to be $10,000.00. The debt owed on the tractor truck was $28,000.00. Further, Rosemary estimated the Transcraft trailer's value to be $25,000.00 and Gary estimated its value to be $8,000.00. No debt was owed on the trailer. The parties also disagreed on the value of the tarps and associated trucking tools, with Rosemary estimating their fair market value to be $2,500.00 and Gary estimating their value to be around $800.00. No debt was owed on these trucking accessories. Neither party presented any evidence to support their assertion of the property values. Gary was awarded his separate property – a 1984 Ford truck, a 1971 Olds Cutlass, and two catamaran boats. The trial judge ordered Gary to pay the debt owed to the Internal Revenue Service, estimated at $39,000.00.

Although Gary contends the trial judge abused his discretion in making a "grossly unequal division of the community estate," we disagree. The trial court did not file findings of fact and conclusions of law that reflect the values it assigned to each asset or liability or the total value of the community property. The trial court order dividing the property clearly disposes of the assets and liabilities, but makes no effort to value each item. Neither party presented evidence in support of

4

their valuation of the disputed property. Without sources of the values asserted, we are unable to adequately assess the values of assets. The appellant bears the burden of demonstrating an abuse of discretion, but has failed to provide the information necessary to examine his claim. *See Siefkas v. Siefkas*, 902 S.W.2d 72, 75 (Tex. App.–El Paso 1995, no pet.). Further, the trial judge was entitled to consider Gary's abilities, business opportunities, future earning capacity, and good physical condition, as well as Rosemary's poor health, disability, and lack of any substantive future earning capacity. After reviewing the record, we cannot conclude that the trial court abused its discretion in dividing the community estate. Accordingly, we overrule Gary's first issue.

## Applicable Law and Discussion – Spousal Maintenance

Section 8.051 of the family code provides that a judge may order spousal maintenance if the duration of the marriage was ten years or longer, the spouse seeking maintenance lacks sufficient property, including property distributed to the spouse under the family code, to provide for the spouse's minimum reasonable needs (as limited by section 8.053), and the spouse seeking maintenance is unable to support herself through appropriate employment because of an incapacitating physical disability. TEX. FAM. CODE ANN. § 8.051(2) (Vernon Supp. 2005). Thus, to be eligible for spousal maintenance, the spouse seeking support must first show that she clearly lacks property and earning ability adequate to provide for her reasonable needs. *Alexander v. Alexander*, 982 S.W.2d 116, 119 (Tex. App.–Houston [1st Dist.] 1998, no pet.).

After determining a spouse is eligible for maintenance, the judge must then determine the nature, amount, duration, and manner of period payments by considering all relevant factors, including, but not limited to:

(1) the financial resources of the spouse seeking maintenance, including the community and separate property and liabilities apportioned to that spouse in the dissolution proceeding, and that spouse's ability to meet the spouse's needs independently;

(2) the education and employment skills of the spouses, the time necessary to acquire sufficient education or training to enable the spouse seeking maintenance to find appropriate employment, the availability of that education or training, and the feasibility of that education or training;

(3) the duration of the marriage;

(4) the age, employment history, earning ability, and physical and emotional condition of the spouse seeking maintenance;

(5) the ability of the spouse from whom maintenance is requested to meet that spouse's personal needs and to provide periodic child support payments, if applicable, while meeting the personal needs of the spouse seeking maintenance;

(6) acts by either spouse resulting in excessive or abnormal expenditures or destruction, concealment, or fraudulent disposition of community property, joint tenancy, or other property held in common;

(7) the comparative financial resources of the spouses, including medical, retirement, insurance, or other benefits, and the separate property of each spouse;

(8) the contribution by one spouse to the education, training, or increased earning power of the other spouse;

(9) the property brought to the marriage by either spouse;

(10) the contribution of a spouse as homemaker;

(11) marital misconduct of the spouse seeking maintenance; and

(12) the efforts of the spouse seeking maintenance to pursue available employment counseling as provided by Chapter 304, Labor Code.

TEX. FAM. CODE ANN. § 8.052 (Vernon Supp. 2005).

Although Gary contends the trial judge abused his discretion in ordering spousal maintenance, we cannot agree. Rosemary meets the threshold requirements to request spousal maintenance. *See* TEX. FAM. CODE ANN. § 8.051(2). The minimum reasonable needs for a particular individual or family is a fact-specific determination that must be made by on a case-by-case basis. *See In re Marriage of Hale*, 975 S.W.2d 694, 698 (Tex. App.– Texarkana 1998, no pet.). The record contains ample evidence of Gary's abilities and business opportunities. Based on this evidence, the judge could conclude Gary's potential for future earning capacity was strong. Additionally, the judge could consider Gary's good physical condition as contrasted with Rosemary's poor health, disability, and lack of any substantive future earning capacity. Although she received monthly social security disability benefits in the amount of $552.00, Rosemary's monthly expenses for the mortgage, electricity, phone, insurance, food, and fuel were estimated to be $1,030.00, leaving a $478.00 deficit. The trial judge ordered spousal maintenance for three years in the amount of $368.00 per month. After reviewing the record, we cannot conclude the judge abused his discretion in ordering spousal maintenance. Accordingly, we overrule Gary's second issue.

## DISPOSITION

Having overruled both of Gary's issues, we *affirm* the trial court's judgment.


                                            **JAMES T. WORTHEN**
Chief Justice


Opinion delivered November 30, 2005.
*Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.*


(PUBLISH)


7



# COURT OF APPEALS

## TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

## NOVEMBER 30, 2005

## NO. 12-04-00128-CV

### GARY B. STAFFORD,

Appellant

V.

### ROSEMARY D. STAFFORD,

Appellee

---

Appeal from the First Judicial District Court
of Sabine County, Texas. (Tr.Ct.No. 3321)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being inspected, it is the opinion of this Court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **BE IN ALL THINGS AFFIRMED** and that all costs of this appeal are hereby adjudged against the appellant, **GARY B. STAFFORD**, for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.*