

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00211-CV

IN THE MATTER OF THE MARRIAGE OF
ROBERT CLINTON BOYD AND SUSAN CROSBY BOYD

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2013-506,202, Honorable Paula Lanehart, Presiding

June 24, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Robert Clinton Boyd and Susan Crosby Boyd were divorced by a Final Decree of Divorce filed on May 5, 2014. As part of the final decree of divorce, Robert was ordered to pay spousal maintenance to Susan in the amount of $2,500 per month, commencing on May 1, 2014, and due on the 1st day of each month thereafter through the month that Robert turns 65 years of age. Robert has appealed that portion of the trial court's decree through two issues. Robert contends that the trial court abused its discretion in ordering the spousal maintenance because there was no evidence or insufficient evidence to demonstrate that: (1) Susan is unable to earn sufficient income to provide

for her needs, and (2) Susan's property is inadequate to provide for her needs, or substantiating her post-divorce reasonable financial needs. We will affirm.

Factual and Procedural Background

Robert and Susan were married in 1991. The parties separated in March 2013. At the time of the marriage, Robert was a practicing anesthesiologist in Lubbock, Texas. At that time, Susan was attending medical school at Texas Tech University. Initially, the plans were that both would practice medicine in Lubbock. However, after graduating from medical school with her M.D. degree, Susan was unable to pass the basic science portion of the Texas Medical Board examination. Susan took the examination 11 times and failed the same portion on each occasion. As a result of this, Susan was never licensed to practice medicine. During this same period of time, Robert developed significant health issues related to weight gain. The result was that, beginning sometime in 2007, Robert was unable to continue practicing medicine and filed for disability under multiple disability policies. The record reflects that Robert receives $28,689 per month in non-taxable disability payments in addition to his social security disability payments.

After Robert's disabilities became more pronounced, the record reflects that Susan spent most of her time helping care for Robert's basic necessities. Robert admitted that he required Susan's help for several basic life functions.

Susan has had only sporadic employment while living in Lubbock. Prior to attending medical school, she was employed for a short period as a receptionist at a physician's office. After graduating from medical school, Susan worked for a time as a

2

liaison between the doctors and Saint Mary's Hospital. That job ended during a period of layoffs after Saint Mary's and Methodist Hospitals merged. Following that job, Susan worked for another physician in Lubbock. That position was terminated after approximately eight months. Susan then obtained a teaching position at Texas Tech School of Allied Health for one trimester per year for the years of 2005-2007. This was a contract teaching position that paid $1,100 for each trimester she taught. The position was eventually eliminated. By the time the divorce was filed, both Robert and Susan were unemployed.

Since the beginning of the divorce process, Susan has made some attempts at finding employment in California, where she plans on residing. She has confined her efforts to looking at jobs available in the medical and biomedical fields. At the time of the final hearing, Susan testified that she was looking for any employment that she could find in the medical field or robotics. Upon further cross-examination, Susan stated she was looking for, "[a]ny sort of employment that I can find. At this point, I'm not real picky since I am going to have to support myself." Further, the record reflects that Susan testified that she reviews job sites looking for employment every day. Along with her age, 51 years, and lack of employment experience, Susan also testified that she is very weak in computer skills. In an effort to learn what she thought would be additional computer skills, she purchased two self-help books, one for Excel and one for PowerPoint. She testified that she was attempting to teach herself these skills.

At the conclusion of the testimony, the trial court took the matter under advisement and, within a matter of days, entered its final decree. The only portion of the decree that Robert complains about is that portion dealing with the sufficiency of the

3

evidence to support the trial court's award of spousal maintenance. We will overrule Robert's contentions and affirm the final decree as entered by the trial court.

## Standard of Review

As an appellate court, we review the trial court's award of spousal maintenance under an abuse of discretion standard. *In re Gonzalez,* No. 07-05-00205-CV, 2006 Tex. App. LEXIS 9538, at *6-7 (Tex. App.—Amarillo Nov. 2, 2006, no pet.) (mem. op.) (citing *Alexander v. Alexander,* 982 S.W.2d 116, 119 (Tex. App.—Houston [1st Dist.] 1998, no pet.)). A trial court does not abuse its discretion if there is some probative and substantive evidence to support the trial court's decision or if the evidence is conflicting. *Id.* at *7 (citing *In re A.S.M.,* 172 S.W.3d 710, 717 (Tex. App.—Fort Worth 2005, no pet.)). Under an abuse of discretion standard, legal and factual sufficiency are not independent grounds for error, rather they are relevant factors in assessing whether the trial court abused its discretion. *Diaz v. Diaz,* 350 S.W.3d 251, 254 (Tex. App.—San Antonio 2011, pet. denied). To determine whether the trial court abused its discretion we consider whether the trial court (1) had sufficient evidence on which to exercise its discretion, and (2) erred in its exercise of that discretion. *In re A.B.P.,* 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.). We then proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *See id.*

As part of our review of the relevant factors in determining whether the trial court abused its discretion in awarding spousal maintenance, we apply the traditional standards to the evidentiary sufficiency of the evidence. In reviewing a challenge to the legal sufficiency of the evidence, we must credit evidence that supports the verdict if a

reasonable fact finder could have done so and disregard contrary evidence unless a reasonable fact finder could not have done so. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009). Challenges to the legal sufficiency of the evidence will be sustained when: (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* If the evidence is so weak as to do no more than create a mere surmise or suspicion, then that evidence does not exceed a scintilla. *Id.*

In a factual sufficiency review, we must review all of the evidence both for and against the finding of the trial court. *See Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). After considering all of the evidence in a neutral light, if we find that the evidence supporting the finding is so weak that it does not support the finding or is so against the great weight of the evidence that the finding is clearly wrong and unjust, then we will reverse. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

Inasmuch as no findings of fact or conclusions of law were requested, we presume the court made findings necessary to support its judgment. *See In re Gonzalez,* 2006 Tex. App. LEXIS 9538, at *7 (citing *Yarbrough v. Yarbrough*, 151 S.W.3d 687, 690 (Tex. App.—Waco 2004, no pet.)). The court's judgment will be affirmed if it can be upheld on any legal theory supported by the evidence. *Id.*

Applicable Law

The Texas Family Code provides for the award of spousal maintenance under the provisions of chapter 8.  *See* TEX. FAM. CODE ANN. ch. 8.  Under the provisions of section 8.051 of the Texas Family Code a trial court may award spousal maintenance if the party seeking maintenance meets the specific eligibility requirements.  TEX. FAM. CODE ANN. § 8.051 (West Supp. 2014).[1]  When, as in this case, a marriage lasts ten years or more, a spouse is eligible for spousal maintenance if that spouse lacks sufficient property and lacks the ability to earn sufficient income to provide for minimum reasonable needs.  § 8.051(2)(B).  Generally, there is a presumption that spousal maintenance is not warranted unless the spouse seeking maintenance has been diligent in seeking suitable employment or in developing skills necessary to become self-supporting.  § 8.053 (West Supp. 2014).  Section 8.052 lists factors to be considered by the trial court in determining the "nature, amount, duration, and manner" of spousal maintenance.  § 8.052 (West Supp. 2014); *see Slicker v. Slicker,* No. 05-13-01762-CV, 2015 Tex. App. LEXIS 5201, at *17-18 (Tex. App.—Dallas May 21, 2015, no pet. h.).  These factors include the ability of the spouse seeking maintenance to provide for his or her own minimum reasonable needs independently, considering the spouse's financial resources on dissolution of the marriage; the age, employment history, earning ability, and physical and emotional condition of the spouse seeking maintenance; the duration of the marriage; the availability and feasibility of education or training necessary to enable the spouse to earn sufficient income; the spouse's contribution as a homemaker; or contribution to the other spouse's education, training, or increased

---

[1] Further reference to the Texas Family Code will be by reference to "section ____," or "§ ____."

earning power; and the property brought to the marriage by either spouse. *See* id. §
8.052(1)-(4), (7)-(9). In addition, the trial court considers "acts by either spouse resulting
in excessive or abnormal expenditures or destruction, concealment, or fraudulent
disposition of community property." § 8.052(6).

## Analysis

By his first issue, Robert contends that the trial court abused its discretion in
awarding Susan spousal support because there was either no evidence or insufficient
evidence that she is unable to earn sufficient income to provide for her needs. A close
review of Robert's contention reveals that it is based upon the unstated assumption that
anyone with a medical degree can earn sufficient income to provide for their needs.
That the argument has a certain attraction cannot be denied, however, the record paints
a far different picture when we look at Susan's actual situation.

Initially, although Susan has a medical degree, she was never able to pass the
licensure examination. Accordingly, she has never been able to practice medicine. In
the 21 years she was married to Robert, she has worked at three different jobs.
Between 1998 and 2004, Susan worked as a liaison between doctors and a hospital in
Lubbock. With the merger of the hospital with another hospital, her job was phased out.
In 2004, Susan worked in a physician's office, however, the position was discontinued
due to lack of work. Susan next worked for four months of the years 2005, 2006, and
2007 teaching a class in the Allied Health department at Texas Tech University. At the
conclusion of 2007, Susan was not rehired. After the divorce was filed, Susan sought to
persuade her contact at Texas Tech to rehire her during the pendency of the divorce but

to no avail. In the final analysis, Susan is a 51-year-old female who has had only sporadic employment outside the home since her marriage to Robert. Further, Susan's testimony, which is uncontroverted, was that she has fallen far behind on basic computer skills since her last employment.

What the record further shows is that Susan's time during the marriage was taken up meeting many of Robert's basic daily needs. By his own admission, Robert is extremely overweight and this problem has affected every aspect of his daily life and, indeed, his basic health. When describing the multitude of physical maladies that resulted in his total disability rating, nearly all were to a greater or lesser degree related to his weight issues. Accordingly, Susan spent most of her days taking care of Robert's personal needs and the home. So much so that, by the time the divorce was filed, Susan had become functionally unemployable.

Robert contends that Susan has not done anything to alter her employment situation during the pendency of the divorce. However, the record is not quite as silent about that issue as he would have us believe. Susan attempted, to no avail, to rekindle her relationship with the Allied Health department at Texas Tech University. The record contains testimony about Susan's daily routine which, among other things, included continually checking internet sites for job openings in the biomedical, medical, and robotics fields in California.[2] When asked if she had submitted her name to any headhunters in California, Susan replied, "Not formally." The import of that statement

---

[2] According to the undisputed testimony, California is where Susan intends to relocate following the divorce.

could logically mean she had spoken with them but had not filled out an application. This is an inference that the trial court could have made.

Admittedly, the record regarding what steps Susan has taken to develop the necessary skills to provide for her minimum reasonable needs is not extensive. However, Susan did testify that the primary limiting factor she faced was having fallen behind in the area of computer skills. To try and rectify this shortcoming, Susan chose to try the self-help method of improving her skills. To this end, she purchased two different books covering two of the more basic computer skills necessary to work in an office. Susan testified that she has used the books and worked on improving her computer skills. All of this was done with the intent of enhancing her employability.

Spousal maintenance is awarded to provide temporary and rehabilitative support for a spouse whose ability for self-support has deteriorated over time while engaged in homemaking activities and whose capital assets are insufficient to provide support. *In re McFarland*, 176 S.W.3d 650, 658 (Tex. App.—Texarkana 2005, no pet.). The record before us supports the trial court's award of spousal maintenance because Susan testified without contradiction about her employment history during the marriage. Further, Susan testified about her duties as a homemaker and spouse in support of Robert. Finally, Susan testified about the steps she had taken to seek employment and to improve her ability to find employment. It was up to the trial court to judge the credibility of Susan's testimony and to decide the weight to be given to that testimony. *See In re C.L.,* No. 07-14-00180-CV, 2014 Tex. App. LEXIS 11104, at *17 (Tex. App.— Amarillo Oct. 7, 2014, no pet.) (mem. op.).

9

In rendering the final divorce decree, the trial court ordered Robert to pay Susan a substantial amount of money for items that were Robert's separate debts that had been paid out of the community estate. Such expenditures could have been considered by the trial court in making the determination to award spousal maintenance. § 8.052; *Slicker,* 2015 Tex. App. LEXIS 5201, at *17-18.

When we analyze this evidence, we must also factor in that there were no findings of fact or conclusions of law requested. Therefore, we presume the court made findings necessary to support its judgment. *See In re Gonzalez,* 2006 Tex. App. LEXIS 9538, at *7 (citing *Yarbrough*, 151 S.W.3d at 690).

The trial court considered Susan's testimony sufficient to overcome the rebuttable presumption that spousal maintenance was not warranted. *See* § 8.053. We find that the evidence is legally and factually sufficient to support the trial court's judgment. *See Akin,* 299 S.W.3d at 115 (legal sufficiency); *Pool*, 715 S.W.2d at 635 (factual sufficiency). Thus, the trial court (1) had sufficient evidence on which to exercise its discretion, and (2) did not err in its exercise of that discretion. *See In re A.B.P.,* 291 S.W.3d at 95. Therefore, the trial court did not abuse its discretion in awarding spousal maintenance to Susan. *See In re Gonzalez,* 2006 Tex. App. LEXIS 9538, at *6-7.

By his second issue, Robert contends that the trial court erred in awarding spousal maintenance because the evidence was insufficient to substantiate: (1) that Susan's property was inadequate to provide for her needs, or (2) Susan's post-divorce reasonable financial needs.

The trial court heard Susan's testimony about the amount of money she would need each month compared to the amount of money she had available each month. The phrase "minimum reasonable needs" in not defined in the Texas Family Code. *See Cooper v. Cooper,* 176 S.W.3d 62, 64 (Tex. App.—Houston [1st Dist.] 2004, no pet.). A trial court must ascertain the minimum reasonable needs of the party seeking maintenance on a fact-specific, individualized, case-by-case basis. *See Amos v. Amos,* 79 S.W.3d 747, 749 (Tex. App.—Corpus Christi 2002, no pet.).

The trial court heard the following testimony regarding Susan's minimum reasonable needs. Her only income, according to her testimony, would be her social security, if she opted to take it early. This amounted to approximately $900/month. Her expenses, as provided to the trial court in Respondent's exhibit 75, amounted to $14,000 per month. However, the $14,000 included the payment of the mortgage on the Ransom Canyon home. After deducting that figure from the calculation, the amount is still in excess of $10,000 per month. That this figure includes a number of discretionary items that Susan may have to learn to live without is beyond dispute; however, it is also beyond dispute that she does not have the current ability to earn anywhere near the amount of money required to meet her minimum reasonable needs. *See id.* Finally, Robert's testimony estimated Susan's minimum reasonable needs at $15,000. Again, this sum is far greater than Susan's income at the time of the divorce. In fact, at the time of trial, Susan had no income other than the temporary spousal support of $3,200 paid by Robert. The record contains no evidence that Susan has misstated her monthly expenses as they existed on the date of the hearing. Additionally, Robert produced no evidence that Susan's expenses were less than those

reflected by Respondent's exhibit 75. Accordingly, the trial court had probative evidence upon which to find what Susan's minimum reasonable needs were on the date of the hearing. *See Limbaugh v. Limbaugh*, 71 S.W.3d 1, 14 (Tex. App.—Waco 2002, no pet.).

The record before us demonstrates that, while Susan was in fact awarded significant property in the divorce, much of that property was not liquid in nature and would require time before any cash value could be realized from this property. Included in this category of property is the home in Ransom Canyon, various collections awarded to Susan, and her long-term insurance policy and retirement account. The long-term insurance policy and retirement account are not readily available and carry significant tax consequences if they are accessed. These assets are not easily available and case law has held that such assets do not prohibit a spouse from receiving spousal maintenance. *See Dunaway v. Dunaway,* No. 14-06-01042-CV, 2007 Tex. App. LEXIS 8950, at *8-9 (Tex. App.—Houston [14th Dist.] Nov. 13, 2007, no pet.) (mem. op.) (holding that the law does not require a spouse to spend down long-term assets or liquidate all available assets to meet short-term needs); *see also In re McFarland*, 176 S.W.3d at 658-59 (holding that receipt of long-term assets that could not be readily liquidated without substantial tax consequences did not prohibit a spouse from receiving spousal support).

Robert contends that Susan received $250,000 dollars of property in the divorce. However, the items she received included an order for reimbursement for expenses improperly paid by community assets in the amount of $71,416.09. However, that reimbursement payment was ordered paid in two installments. The first installment was

12

due on May 1, 2014. The second installment was not due until May 15, 2015. Therefore, on the date the divorce decree was entered, one-half of the reimbursement was a future item that was not due. Additionally, the home in Ransom Canyon had been for sale the entire time the divorce was pending and no offers had been received. When these items from her substantial divorce award are put in proper perspective, at the time the divorce decree was entered, they were not available for Susan to meet her minimum reasonable needs. Accordingly, the trial court did not abuse its discretion in awarding spousal support to Susan. *See In re Gonzalez,* 2006 Tex. App. LEXIS 9538, at *6-7. Robert's contentions to the contrary are overruled.

## Conclusion

Having overruled Robert's contentions, the trial court's judgment is affirmed.

Mackey K. Hancock
Justice